Trey D. Brown (SBN 314469)
In-House Counsel
Strike 3 Holdings, LLC
11271 Ventura Blvd., Ste. 717
Los Angeles, CA 91604
Telephone: (323) 347-4271
Email: trey@strike3holdings.com

Christian W. Waugh (FL SBN 71093)
WAUGH PLLC
201 E. Pine Street, Ste. 315
Orlando, FL 32801
Telephone: (321) 800-6008
Email: cwaugh@waugh.legal

Jeremy J. Thompson (MN SBN 402173)
The Law Office of Jeremy J. Thompson PLLC
5200 Wilson Road, Ste. 150
Edina, MN 55424
Telephone: (952) 952-1883
Email: jeremy@jthompson.law

Lincoln D. Bandlow, Esq. (CA #170449)
Law Offices of Lincoln Bandlow, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9680
Email: Lincoln@BandlowLaw.com

Attorneys for Plaintiffs
STRIKE 3 HOLDINGS, LLC
COUNTERLIFE MEDIA, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO**

STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company, and COUNTERLIFE MEDIA, LLC, a Delaware limited liability company,

Plaintiffs,

vs.

META PLATFORMS, INC., a Delaware corporation,

Defendant.

Case Number: 5:25-cv-06213-EKL

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE AND CONSIDERATION OF DOCUMENTS**

Date: January 21, 2026
Time: 10:00 a.m.
Ctrm: 7

Judge: Hon. Eumi K. Lee

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Strike 3 Holdings, LLC ("Strike 3") and Counterlife Media, LLC ("Counterlife") hereby submit the following Opposition to Defendant's Request for Judicial Notice and Consideration of Documents ("Request"), D.E. 35, filed by Defendant Meta Platform Inc. ("Meta") in conjunction with its Motion to Dismiss Plaintiffs' Complaint for Copyright Infringement ("Motion"). D.E. 34.

## I. INTRODUCTION

"The overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). On a Rule 12(b)(6) challenge, "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.* Meta exploits its sprawling online presence to rewrite the pleadings with materials neither incorporated into Plaintiffs' Complaint nor free from reasonable dispute. Indeed, Meta attempts to use these materials to conjure up rival "truths" or support otherwise untenable arguments. This is an abuse of judicial notice.

While it may be the case that Meta has many employees, its submission of various 10-K Forms (Exs. 1 & 2) injects facts subject to dispute because the numbers represent Meta's global workforce, and not necessarily those with access to the infringing IP addresses. Next, Meta's reference to a technical paper (Ex. 3) is irrelevant and the kind of fact-charged document that Rule 201 typically guards against, particularly where the document raises more questions than it answers. Finally, Meta introduces its July 2025 Terms of Service (Ex. 4) as evidence that it would not infringe Plaintiffs' works since Meta prohibits use of its artificial intelligence ("AI") to generate adult content. This is not just a disputed fact, but a hypothetical, neither of which are appropriate. Thus, the Court should deny Meta's Request for Judicial Notice and Consideration of Documents in part.

## II. FACTS

On July 23, 2025, Plaintiffs filed a Complaint against Meta for direct and secondary infringement of their copyrights. D.E. 1. Because Meta's misconduct is so widespread, encompassing hundreds of IP addresses infringing thousands of Plaintiffs' copyrights, Plaintiffs appended several exhibits containing data illustrating Meta's activities. Since Meta's infringement is so brazen, the Complaint references a separate matter involving a similar scheme whereby Meta torrented and infringed creative works to train its AI. *See Kadrey v. Meta Platforms, Inc.*, No. 23-3417 (N.D. Cal.). Plaintiffs included testimony and evidence from *Kadrey*, not because Rule 8 demands it, but because the revelations are so extraordinary that, absent this context, they may appear incredible. Plaintiffs do not oppose Meta's request to take notice of the exhibits from *Kadrey* or its reordered data from Plaintiffs' Exhibit F.

Faced with these overwhelming facts and admissions, but needing to support its Rule 12(b)(6) challenge, D.E. 34, Meta requested the Court take notice of several documents that were not integrated into the Complaint. D.E. 35. While public documents can generally be judicially noticed for limited purposes, these documents are used throughout Defendant's Motion to sneak in controversial facts, undermine the pleadings, and dig Meta's way out of discovery and cross-examination.

## III. LEGAL STANDARD

"[T]aking judicial notice of other materials is not obligatory." *Rohnert Park Citizens to Enforce CEQA v. U.S. Dep't of Transp.*, 2009 WL 595384, at *3 (N.D. Cal. Mar. 5, 2009), *aff'd*, 385 F. App'x 759 (9th Cir. 2010). Judicial notice "is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Khoja*, 899 F.3d at 1003. Courts may only take notice of adjudicative facts "not subject to reasonable dispute," which includes facts that are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. Rs. Evid. 201(b)(1)–(2). "[A] high degree of indisputability is the essential prerequisite' to taking judicial notice of adjudicative facts and that 'the tradition [of taking judicial

notice] has been one of caution in requiring that the matter be beyond reasonable controversy.'" *See Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (quoting Fed. R. Evid. 201, Notes of Advisory Committee). "[C]ourts are not permitted to take judicial notice of the truth of the contents of a document." *See Tandon v. Newsom*, 517 F. Supp. 3d 922, 944 (N.D. Cal. 2021) (citation omitted).

Additionally, introducing extrinsic material is generally improper on a Rule 12(b)(6) challenge unless it is incorporated by reference in the pleadings. *See Khoja*, 899 F.3d at 998–1002 (distinguishing judicial notice from the incorporation by reference doctrine). "The incorporation by reference doctrine 'treats certain documents as though they are part of the complaint itself." *Thornton v. Mindvalley, Inc.*, 2025 WL 877714, at *3 (N.D. Cal. Feb. 14, 2025) (quoting *Khoja*, 899 F.3d at 1002) (internal quotations omitted). "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (citations omitted). "The 'mere mention' of a document's existence is insufficient to incorporate its contents by reference." *Id.* (citation omitted). "The party requesting judicial notice bears the burden" of showing notice is appropriate. *See Harrison v. Milligan*, 2012 WL 1835428, at *1 (N.D. Cal. May 21, 2012) (citation omitted).

## IV. ARGUMENT

### A. Exhibits 1 & 2: The Numbers Contained in Meta's 10-K Forms Are Not Subject to Judicial Notice

Meta first seeks to introduce 10-K Forms filed with the Securities and Exchange Commission ("SEC") in 2018 and 2024 to support its proposition that "[t]ens of thousands of employees . . . access the internet at Meta every day."[1] D.E. 34, at 15.

> **[Ex. 1]** Meta Platform, Inc.'s, formerly Facebook, Inc., Annual Form 10-K filed with the Securities and Exchange Commission for the fiscal year ended December 31, 2018
> **[Ex. 2]** Meta Platform, Inc.'s Annual Form 10-K filed with the Securities and Exchange Commission for the fiscal year ended December 31, 2024

[1] The sentence also mentions "contractors, visitors, and third parties," D.E. 34, at 15, but the citation to the exhibits is made prior to this proposition and thus it remains unsupported.

D.E. 35, at 2. These documents are not incorporated into the pleadings and Meta's reliance on them to introduce disputed facts is improper.

While Form 10-K is generally a "matter[] of public record and may be subject to judicial notice," *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1235 (N.D. Cal. 2014) (citation omitted), "[i]t is only 'appropriate . . . for the court to take judicial notice of the content of the SEC Forms [ ] and the fact that they were filed with the agency. *The truth of the content, and the inferences properly drawn from them, however, is not a proper subject of judicial notice under Rule 201*.'" *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1032 (C.D. Cal. 2015) (collecting cases) (emphasis original); *Chanos*, 75 F. Supp. 3d at 1235 (considering 10-K Forms "for the fact that they were filed and provided certain information to the public"). The Complaint mentions that Meta is a large company, *see* D.E. 1, at ¶¶ 34, 36, but it can hardly be said that the pleadings incorporate these documents, let alone put the precise size of Meta's operation at issue such that Plaintiffs are "selecting" or "omitting portions" of the facts from their Complaint. *Cf. Khoja*, 899 F.3d at 1002.

Meta's reliance on the 10-K Forms is also inappropriate "[b]ecause the truth of the matters asserted in these documents is subject to a reasonable dispute[.]" *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 930 (N.D. Cal. 2022) (citing *Khoja*, 899 F.3d at 999–1001) (explaining notice was taken "not for the truth of the matters asserted therein or for the purpose of resolving factual disputes"). Indeed, Meta only argues that they are matters of public record––not that they are free from dispute. *See* D.E. 35, at 6. Neither of the exhibits specify how the total number of employees is calculated, nor what branches, divisions, and roles at Meta (formerly Facebook Inc.) they include. *See*, *e.g.*, *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–55 (7th Cir. 1995) (affirming district court's declination to take judicial notice of Form 10-K for the number of employees because the form "covers" various and unrelated branches and divisions of the company).

For example, Meta's 10-K Form for 2024 notes that its number includes a "global workforce" from "more than 90 cities around the world." D.E. 34-3, at 12. This does not, however, clarify which cohort of the workforce had access to the infringing IP addresses—corporate or residential. Second, in its Motion, Meta suggests that its employees "access the internet at Meta every day." D.E. 34, at 15. The 10-K Forms, however, make no mention of employee use or frequency of use of the Internet (supplied by Meta or otherwise), let alone which employees, branches, or divisions had access to the infringing IP addresses discussed throughout the pleadings. Thus, even if the 10-K Forms are subject to judicial notice, Meta's overreliance on them for the truth of the contents is disputable and thus inappropriate.

### B. Exhibit 3: Meta Cannot Bypass Expert Discovery by Incorporating Its Own Technical Paper

Next, Meta seeks to introduce a technical paper published to an open-access website.

> **[Ex. 3]** The research paper titled "Ego4D: Around the World in 3,000 Hours of Egocentric Video," published by Meta AI Research (formerly Facebook AI Research) and academic collaborators[.]

D.E. 35, at 2. But injecting technical facts, usually reserved for expert discovery, as an adjudicative fact goes beyond the strictures of Rule 201. The *only* mention of Ego4D in the Complaint is as background:

> In October 2021, Meta officially launched the Ego4D initiative. This was a global effort to collect egocentric, first-person video to fuel next-gen models for virtual and augmented realities. Mark Zuckerberg, Meta's CEO, tied this launch directly to Meta's metaverse vision. Meta then intensified its research into real-world tasks like episodic memory, hand-object interaction, and video question answering.

D.E. 1, at ¶40.

In response to this background information, Meta seeks to append a nearly 100-page report, authored (in part) by Meta. Meta then argues that the material used to train Ego4D were from "a *dataset*" of videos "shot from head-mounted cameras . . . ." D.E. 34, at 9 (emphasis added). This is misleading at best. At this stage of the proceedings, a defendant is not entitled to

substitute a novel-length series of irrelevant, disputable facts in place of a plaintiff's chosen sentence.

"[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. Although it may be appropriate to consider external materials "only as background material" this must be done "without relying on it to resolve any factual dispute." *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008). Courts "cannot take judicial notice of disputed facts in online articles for the purpose of creating a defense against the well-pleaded allegations . . . ." *See Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 773 (N.D. Cal. 2025) (citing *Khoja*, 899 F.3d at 1002). "[T]he fact that publications made statements" about the technology, "thus putting that information in the public realm, is not relevant[.]" *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017) (citing *Gerritsen*, 112 F.Supp.3d at 1030) (denying request for judicial notice of press releases and news articles because "it is irrelevant, for purposes of defendants' motion to dismiss[] that the information in the press releases and news articles was publicly available")).

Meta conclusively states that the document is "not subject to reasonable dispute," citing *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1009 (N.D. Cal. 2020) for the proposition that the court there tool judicial notice of news articles and white papers in that matter, but fails to explain *why* the contents of the technical paper here are indisputable. *See* D.E. 35, at 6. That is unsurprising, as the quality of such papers is far from assured. The paper was published to arVix, D.E. 35, at 2, a free distribution service and an open-access archive of research papers that "are not peer-reviewed by arXiv." *About arXiv*, ARVIX, https://info.arxiv.org/ (last visited Nov. 10, 2025). "[T]he contents of arXiv submissions are wholly the responsibility of the submitter," i.e., Meta, "and are presented 'as is' without any warranty or guarantee" from the

website.[2] *See id.* This does nothing to assure the Court of the accuracy of the paper's content. *See KFD Enters., Inc. v. City of Eureka*, 2014 WL 1877532, at *2 (N.D. Cal. May 9, 2014) (holding "technical documents and opinions" as well as "expert findings are capable of immediate and accurate determination by a source whose accuracy cannot reasonably be questioned, or that they are not in dispute"); *see also In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *5 (N.D. Cal. Nov. 16, 2021) (noting the court "does not take judicial notice of any disputed facts contained in" research papers).

This is an improper attempt to use judicial notice "of the fact that publications have published material as a backdoor avenue for introducing evidence of the facts themselves." *Hadley*, 243 F. Supp. 3d at 1088. Indeed, it is impossible to verify since the dataset used to train Ego4D is not publicly available or published in the paper.

This is particularly concerning since the paper appears to contradict Meta's suggestion that the *only* dataset used to train Ego4D were videos shot from head-mounted cameras. The paper also notes that *this data* was trained on "millions of rich annotations that resulted *from over 250,000 hours* of annotator effort and range *from temporal, spatial, and semantic labels*, [etc.]" likely developed from other videos. *See* D.E. 34-4, at 3–4 (emphasis added). That is how AI models work: data *training* on data that has been *trained* on other data. In any event, complex, technical, factual disputes like these are reserved for discovery, not judicial notice.

### C. Ex. 4: Facebook's Terms of Service Say Nothing About Users or Meta's Actual Behavior in this Matter

Finally, Meta seeks to introduce its Terms of Service ("Terms").

**[Ex. 4]** Meta AI's Terms of Service [posted to] https://www.facebook.com/legal/ai-terms

[2] Just after Meta's Request was filed, arXic announced new policies requiring greater peer review of computer science papers. *See* Kat Boboris, *Attention Authors: Updated Practice for Review Articles and Position Papers in arXiv CS Category* ARVIX (Oct. 31, 2025), https://blog.arxiv.org/2025/10/31/attention-authors-updated-practice-for-review-articles-and-position-papers-in-arxiv-cs-category/.

D.E. 35, at 2.

"[W]here a document is 'unnecessary' or irrelevant to a court's decision, the court need not take judicial notice." *See Ramachandran v. City of Los Altos*, 2024 WL 3642193, at *5 (N.D. Cal. 2024)) (collecting cases). These Terms are not an employee handbook. They govern "user" conduct that is irrelevant to Plaintiffs' claims. Yet Meta's suggestion that everyone–employees or users–conformed to this its admonition against creating adult content is an egregious misuse of judicial notice. In fact, it suggests that it is incapable of dispute that every Meta employee and agent follow all of Meta's policies all of the time. That is not only improper, it is unsupported by the document.

The Terms took effect on July 1, 2025, D.E. 34-5, at §11, only covering a few weeks before Plaintiffs filed their Complaint. *See Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *2 (N.D. Cal. July 20, 2023) (declining to take judicial notice of terms of use since "it is unclear whether" they "are the same versions that may have been available" at earlier times); *Duguid v. Facebook, Inc.*, 2016 WL 1169365, at *2–3 (N.D. Cal. Mar. 24, 2016); *see also In re Facebook*, 477 F. Supp. 3d at 1009 (taking notice only of Facebook's data policies "in effect during the time period covered by Plaintiff's allegations"). The Terms are in no way integrated into the pleadings. *Cf. Duguid*, 2016 WL 1169365 at *3. "[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002. "The simple act of posting something publicly on the Internet is insufficient assurance of an exhibit's accuracy," and courts routinely decline to take notice of websites' terms. *See Thornton v. Mindvalley, Inc.*, 2025 WL 877714, at *2 (N.D. Cal. Feb. 14, 2025) (collecting cases).

But Meta goes one step further. It argues Plaintiffs' material would not have been "useful for Meta's AI training" because its Terms "explicitly prohibit users from attempting to generate adult content[.]" D.E. 34, at ¶¶12, 17. If the Court could take judicial notice that no copyright infringement took place simply because the Copyright Act outlaws it, this would be a short case.

This circular argument is contradicted by the pleadings as well as Meta's highly publicized history.

Plaintiffs' well-plead allegations relate a Wall Street Journal investigation, which found that Meta's chatbots engaged in "explicit content" and raised the possibility that Meta's "AI personas [have been programed] with the capacity for fantasy sex." D.E. 1, at ¶¶142–43. Indeed, Meta's own oversight board has reported incidents of sexually explicit AI images. *New Decision Addresses Meta's Rules on Non-Consensual Deepfake Intimate Images* (Jul. 25, 2025), OVERSIGHT BOARD https://www.oversightboard.com/news/new-decision-addresses-metas-rules-on-non-consensual-deepfake-intimate-images/. At a minimum, this suggests that the control Meta's Terms have over user or employee behavior is not as ironclad as Meta suggests in its Motion. These factually-charged disputes are not subject to judicial notice.

## V. CONCLUSION

Meta's attempts to rewrite the pleadings by introducing facts that are, at best, irrelevant, and, at worst, misleading should not be rewarded with judicial notice. Although these documents have been made public, Meta has given no indication that they are generally known or accurate on their face. This failing is especially pronounced in Meta's misuse of these extrinsic documents in its Motion. For all the foregoing reasons, the Court should either deny judicial notice of Exhibits 1, 2, 3, and 4, or, in the alternative, decline to extend its notice to the truth of the contents of those documents.

DATED November 10, 2025.

Respectfully submitted,

By: /s/ *Christian W. Waugh*

Christian W. Waugh (FL SBN 71093) *
WAUGH PLLC
201 E. Pine St., Ste. 315
Orlando, FL 32901
*cwaugh@waugh.legal*
Tel: (321) 800-6008

Trey D. Brown (SBN 314469)

Strike 3 Holdings, LLC
11271 Ventura Blvd., Ste. 717
Studio City, CA 91604
*trey@strike3holdings.com*
Tel: (323) 347-4721

Jeremy J. Thompson (MN SBN 402173) *
Law Office of Jeremy J. Thompson PLLC
5200 Wilson Rd., Ste. 150
Edina, MN 55424
*jeremy@jthompson.law*

Lincoln D. Bandlow, Esq. (SBN 170449)
Law Offices of Lincoln Bandlow, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
*Lincoln@BandlowLaw.com*
Tel: (310) 556-9680

*Attorneys for Plaintiffs,*
STRIKE 3 HOLDINGS, LLC and
COUNTERLIFE MEDIA, LLC