**[Counsel on Signature Page]**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company, and COUNTERLIFE MEDIA, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:25-CV-06213-EKL<br><br>~~[PROPOSED]~~ **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AS MODIFIED**<br><br>Judge: Hon. Eumi K. Lee<br><br>Trial Date: February 7, 2028<br>Date Action Filed: July 23, 2025 |

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information ("Guidelines"), and any other applicable orders and rules.

**2. COOPERATION AND PROPORTIONALITY**

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with the Guidelines to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties' cooperation includes propounding reasonably particular discovery requests, identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable ESI, and establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations

**3. PRESERVATION**

Consistent with Sedona Conference Principle 6,[1] which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information," the parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a) Parties are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data.

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 118 (2018).

(b) The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and matter-specific measures will not be taken to preserve ESI from these sources, which may be retained pursuant to standard business processes, unless otherwise ordered by the Court:

1. backup systems and/or tapes used for disaster recovery; and
2. systems no longer in use that cannot be accessed by using systems currently in use by the party.

(c) The following data types are burdensome to preserve and the parties will not take matter-specific steps to preserve the information in these data sources unless there is an indication from a custodian that the information contained on those data sources is relevant to this matter:

1. Voice messages.
2. Instant messages and chats that are not chronicled to an email archive system.
3. Sound recordings, including, without limitation, .mp3/.mp4 and .wav files.
4. Video recordings.
5. Information solely contained on mobile devices.

(d) In addition to the agreements above, the parties agree that data from these sources could contain relevant information but under the proportionality factors, should not be preserved (this category will not include sources known or understood based on a reasonable investigation to contain any at-issue data relating to (a) the torrenting of Plaintiffs' copyrighted works (including contracts or communications with third party vendors to assist with such torrenting) or (2) use of Plaintiffs' copyrighted works to train any generative AI model at issue in this litigation or any dataset or records describing that data (hereinafter, collectively, "AI/Torrenting Data"), preservation of which will be governed by Rule 37(e), however the parties will meet and confer to determine both any format and reasonable scope regarding the production of any such AI/Torrenting Data):

1. Deleted, slack, fragmented, or unallocated data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates.

5. Mobile device activity logs.

6. Server, system, or network logs.

7. Dynamic fields in databases or log files not stored or retained in the usual course of business.

8. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

9. Other forms of ESI whose preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

(e) The Parties acknowledge that Strike 3 Holdings, LLC, Counterlife Media, LLC, and Meta Platforms, Inc. are subject to various privacy regulations and court orders that require the disposition of identifiable user data. To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified by a requesting party as relevant to the claims or defenses in this case, the parties will meet and confer on preservation of such information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated.

**4. SEARCH**

The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce

documents responsive to discovery. The parties agree to disclose the method or methods they are employing to identify responsive documents, including but not limited to identification of custodians, search terms, and date ranges.

**Custodians:** The Parties shall meet and confer to identify custodians for this case. Defendant shall, in consultation with Plaintiff, identify six (6) Meta-affiliated custodians most likely to have discoverable ESI in their possession, custody, or control. Plaintiffs shall, in consultation with Defendant, identify a total of six (6) Strike 3 Holdings, LLC and/or Counterlife Media, LLC-affiliated custodians most likely to have discoverable ESI in their possession, custody, or control. All Document Custodians shall be identified by name, title, and a brief description of their potential knowledge as relates to this litigation. The identification process shall be complete no later than 30 days from entry of this Order.

**Additional Custodians:** If, after the Parties identify Custodians, a Requesting Party believes that additional Custodians are likely to be in possession of potentially responsive, non-duplicative documents and can show good cause why such additional Custodians should be added, the Requesting Party shall advise the Producing Party in writing of the proposed additional Custodians and the particularized basis for the request. If the Parties have not agreed whether to add the Custodians within 30 days of the Requesting Party's request, then the matter may be brought to the Court in accordance with the applicable orders and rules. The Requesting Party will bear the burden of demonstrating that the request is supported by good cause. Nothing in this paragraph waives any objection by a Producing Party that further investigation, discovery, or document production is needed before determining the necessity or lack thereof of additional custodians.

**Search Terms:** Each Producing Party may, but is not required to, use search terms to locate potentially responsive documents for collection and/or culling after collection. For any given source, the Producing Party is best equipped to determine whether search terms or other approaches – such as retrieval of documents and sources identified during custodial interviews – is appropriate for each such source. To the extent search terms are used for a given source or set of data, each Producing Party will develop an initial set of appropriately tailored search terms to locate potentially responsive documents for collection and/or culling after collection. For the search terms

selected by the Producing Party, each Producing Party shall disclose to the Requesting Party: (i) the search terms applied; (ii) the custodians and data sources searched; and (iii) a hit report showing the number of documents returned by each term. All hit reports will include (1) the number of documents returned by each term; (2) the number of documents + family returned by each term; and (3) the number of unique documents returned by each term.

(a) If the Requesting Party objects to the sufficiency of the search terms, the Parties shall meet and confer in good faith.

1. The Requesting Party may propose a set of five (5) additional or modified search terms, with a written explanation of why these additional search terms are necessary to respond to the Requesting Party's document requests. The Producing Party shall provide a hit report showing the number of documents returned by each proposed term and shall either apply the proposed terms or provide a written explanation of why the terms are unreasonable, disproportionate to the needs of the case, or duplicative.

2. Beyond this first opportunity to propose additional or modified search terms, the Parties may meet and confer regarding additional search term requests in the same manner.

3. If the Parties cannot resolve a dispute regarding search terms, either Party may raise the issue with the Court in accordance with the applicable orders or rules.

(b) Technology Assisted Review. A Producing Party will disclose its use of technology assisted review or Artificial Intelligence ("AI") assisted review (collectively "TAR") when used to filter out or exclude non-responsive documents. If requested, a Producing Party shall meet and confer regarding any additional information the Producing Party shall disclose regarding its use of TAR, including the measure(s) used to validate the results of the TAR methodology or similar advanced analytics.

(c) Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents (1)

captured by search terms; (2) identified as potentially responsive through TAR; or (3) identified as potentially responsive based on location, source or other criteria, are in fact responsive to the Requesting Party's discovery requests. Similarly, nothing in this Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive. The parties agree that if any part of a document is responsive, the entire document and its family members (i.e., parent email or attachments) shall be produced, except that (1) any document may be slipsheeted in its entirety under a claim of privilege, work product, or other applicable protection and (2) any portion of a document may be redacted on the basis of privilege, work product, or other applicable protection. The Receiving Party reserves the right to challenge the withholding and/or redaction of documents. The parties shall meet and confer in good faith to resolve any disputes regarding the withholding and/or redaction of documents. Any intractable disagreements in this regard shall be resolved by the Court. Nothing in this Order otherwise requires the production of documents that are not responsive to the Requesting Party's request, privileged, or otherwise protected from disclosure.

(d) Each party will use its best efforts to filter out irrelevant common system files and application executable files by using a commercially reasonable hash identification process. For example, Hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

(e) De-Duplication. Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI across Custodians at the family level. Attachments to parents may not be suppressed if a duplicate stand - alone version of the attachment exists. Stand-alone versions of documents may not be suppressed if a duplicate version is attached to a parent. An All Custodians field containing the identity of each custodian whose data was de-duplicated shall be provided as a metadata field in the production data file.

(f) Email Threading. Where multiple email messages are part of a single chain or "thread," a party is only required to produce or enter on a privilege log the most inclusive message ("Last In Time Email") and need not produce or log earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced or logged.

(g) No provision of this Order affects any inspection of source code, including source code that appears in otherwise responsive documents or information, that is responsive to a discovery request consistent with the protective order governing this case.

**5. PRODUCTION FORMATS[2]**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

**6. TIMING OF PRODUCTIONS**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties may produce documents on a rolling basis (i.e. breaking the full document production into multiple productions made on different dates).

**7. DOCUMENTS PROTECTED FROM DISCOVERY**

The parties have submitted a separate Stipulated Protective Order that governs the treatment of confidential documents and information produced or disclosed in discovery, including provisions under Fed. R. Evid. 502(d).

---

[2] Documents that were previously produced in other matters may be produced in this action in accordance with the ESI protocols governing the format of document productions in those other matters, provided that those reproductions are in a reasonably usable format.

8. **PRIVILEGE LOGS**[3]

(a) Production of Privilege Logs. Except as provided otherwise below, for any document withheld in whole or in part, the Producing Party will produce privilege logs in MS Excel format. Privilege logs shall be produced according to the following schedule: 60 days after substantial productions, and in any case no later than the close of fact discovery for documents produced during fact discovery.

(b) Exclusions from Logging Documents Reflecting Privileged Communications or Work Product. Communications or work product involving Counsel that post-date the filing of the initial complaint need not be placed on a privilege log.

(c) Metadata Log. Each Party's Privilege Log must provide the objective metadata listed below (to the extent it is reasonably available and does not reflect privileged or protected information) and the privilege or protection being asserted (e.g., attorney-client; attorney work product; joint defense and/or common interest, etc.). The party need not include a more detailed description of the document or the factual basis for the assertion of a privilege or protection unless the Court finds that disclosure of that additional information is necessary to resolve a dispute. Attorneys or their staff must be identified on the log with an asterisk (or similar notation) or under a heading such as "Legal Source."

1. Objective metadata includes the following fields, as defined herein (to the extent these fields are available for a particular document), though it does not have to be in the order set forth below:

(1) BEGBATES[4]

(2) ENDBATES

(3) BEGATTACH

[3] For the avoidance of doubt, the provisions of this Section 8 apply solely in this action and shall not apply to privilege logs created for purposes of other cases or investigations and re-produced in this case. To the extent such logs are re-produced, they shall be provided in the same format in which they were originally produced.

[4] A document being entirely withheld may not receive a Bates ID, and an alternative ID may be provided.

(4) ENDATTACH

(5) FILENAME

(6) EMAIL SUBJECT

(7) AUTHOR

(8) TO/FROM/CC/BCC

(9) DATE SENT

(10) DATE RECEIVED

(11) DATE CREATED

(12) ALL CUSTODIANS

(d) Email. Parties agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email. Further, each individual email within the thread of the Last In Time Email need not be logged if the participants of each email within the thread are all disclosed in the log entry. Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

(e) Challenges to Privilege Claims. Following the receipt of a privilege log or documents that have been redacted for privilege, a Receiving Party may identify, in writing (by Bates/unique ID), the particular documents, if any, that it believes have been improperly withheld or redacted or that require further explanation. The Producing Party shall use reasonable efforts to respond to reasonable requests (in number or volume) within 14 days. If, following such response, the Parties are unable to reach a mutually agreeable solution in good faith meet and confer, the matter may be brought to the Court ~~in accordance with its applicable orders and rules.~~ by filing a joint statement in accordance with Magistrate Judge van Keulen's Civil and Discovery Referral Matters Standing Order.

(f) Changes to Redactions or Privilege Designations. Where a Producing Party changes, in whole or in part, the redaction or privilege designation of a document, the updated document shall be produced with an overlay and load file indicating the document being replaced. The replacement document shall bear the same Bates

numbers to the extent practicable. If the replacement document is produced with a new Bates number, a cross-reference file shall also be provided.

(g) Nothing in this Section 8 shall be interpreted to require disclosure of nonresponsive information or responsive information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Nothing in this Order waives any applicable privilege or other legal basis under which information may not be subject to production.

(h) The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

(i) Nothing in this Section 8 shall preclude or impair any and all protections provided by any Protective Order(s) agreed and entered into by the Parties.

(j) Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**9. MODIFICATION**

This Order may be modified by a Stipulated Order, by written agreement of the parties or by the Court for good cause shown.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: June 22, 2026

WAUGH PLLC

/s/ Christian W. Waugh
Christian W. Waugh (FL SBN 71093)
WAUGH PLLC
201 E. Pine Street, Ste. 315
Orlando, FL 32801
Telephone: (321) 800-6008
Email: cwaugh@waugh.legal

Trey Brown (SBN 314469)
In-House Counsel
Strike 3 Holdings, LLC
11271 Ventura Blvd., Ste. 717
Los Angeles, CA 91604
Telephone: (323) 347-4271

Email: trey@strike3holdings.com

Jeremy J. Thompson (MN SBN 402173)
The Law Office of Jeremy J. Thompson PLLC
5200 Wilson Road, Ste. 150
Edina, MN 55424
Telephone: (952) 952-1883
Email: jeremy@jthompson.law

Lincoln D. Bandlow, Esq. (SBN 170449)
Law Offices of Lincoln Bandlow, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9680
Email: Lincoln@BandlowLaw.com

Brian S. Ginter (SBN 265786)
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Telephone: (213) 236-0600
E-mail: bginter@bwslaw.com

Attorneys for Plaintiffs
STRIKE 3 HOLDINGS, LLC
COUNTERLIFE MEDIA, LLC

Dated: June 22, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ Angela L. Dunning

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
SAMUEL BLANKENSHIP (339905)
chchun@cgsh.com
KIMBERLY BITTINGER (359907)
kbittinger@cgsh.com
1841 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 815-4100
Facsimile: (650) 815-4199

CLEARY GOTTLIEB STEEN & HAMILTON LLP
THOMAS W. YEH (287118)
tyeh@cgsh.com
650 California Street, Suite 2400
San Francisco, CA 94108
Telephone: (415) 796-4400
Facsimile: (415) 796-4499

Attorneys for Defendant
META PLATFORMS, INC.

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: June 24, 2026

MAGISTRATE JUDGE SUSAN VAN KEULEN

**APPENDIX 1: PRODUCTION FORMAT**

1. **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

   a. an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

   b. an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity);

   c. Group IV black and white TIFF images of at least 300 dpi;

   d. and document level .TXT files for all documents containing extracted full text or OCR text.

   e. Parent-child relationships will be maintained in production. Links within a document are not considered attachments. Non-substantive automatically-generated embedded files, such as logos, embedded, non- substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced as separate attachments. If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Production Media and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the producing party's name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this Order will preclude or impair any and all protections provided to the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder

level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

4. **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document, to the extent practicable. The parties are not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |

| Field Name | Field Description |
|---|---|
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | Hash value of document (e.g. MD5 or SHA-1) |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FILENAME | Filename of an electronic document |
| ALLFILEPATH(S) | Original path(s) to the individual source file(s). Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the “To” line of the email |
| CC | All recipients that were included on the “CC” line of the email |
| BCC | All recipients that were included on the “BCC” line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) as processed per the TIMEZONE field |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) as processed per the TIMEZONE field |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTIONS | Indicate Yes/No if document redacted |
| TIMEZONE | Reflects the time zone corresponding to the DATETIMERECEIVED and DATETIMESENT fields |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |

5. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The parties shall take reasonable efforts to process presentations (*e.g.* MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Upon written request , the producing party shall provide a higher quality TIFF image or the native or original file provided the volume of documents selected for such re-production is reasonable.

6. **Color.** The parties may request color copies of a limited number of documents where color is necessary to accurately interpret the document.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8. **Native files.** Spreadsheets (*e.g.* MS Excel) will be produced in native format. Spreadsheets may be redacted in native format or as redacted TIFF files with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Producing Parties may also choose to produce other filetypes in native format as appropriate. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text

(where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. The natively produced file shall be named to the corresponding Bates number.

9. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder. For the avoidance of doubt, native files are not required to include a confidentiality designation in their file names to preserve the confidentiality of the native file.

10. **Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.