[*Counsel on signature page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company, and COUNTERLIFE MEDIA, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:25-cv-06213-EKL<br><br>**JOINT STATEMENT RE: META'S REQUEST FOR A PROTECTIVE ORDER**<br><br>Judge: Hon. Eumi K. Lee |

**Close of Fact Discovery:** March 4, 2027

**Issue:** Whether the Court should enter a protective order concerning Plaintiffs' June 10, 2026 subpoena (the "Subpoena") to the non-party law firm Boies Schiller Flexner, LLP ("BSF") seeking all deposition transcripts, documents and discovery responses produced by Meta in *Kadrey v. Meta Platforms, Inc.*, Case No. 3:23-cv-03417-VC (N.D. Cal.) ("*Kadrey*"). The Subpoena currently has a negotiated return date of July 30, 2026. On June 10, 2026, Plaintiffs served document requests on Meta for the same materials sought in the Subpoena. The parties met and conferred by video conference on June 23, 2026 on Meta's request that Plaintiffs withdraw the Subpoena to BSF, but were unable to reach agreement.

**Meta's Compromise Position:** The Subpoena should be withdrawn, and the parties should meet and confer about Plaintiffs' identical requests to Meta in the normal course.

**Plaintiffs' Compromise Position:** Plaintiffs are entitled to the requested documents from the *Kadrey* case. Meta stated on July 10, 2026 in response to Plaintiffs' discovery requests seeking the documents from the *Kadrey* case that Meta will not produce any of the requested documents, so Plaintiffs should receive the documents from BSF pursuant to Plaintiffs' subpoena.

**Proposed Orders:** The parties' proposed orders are appended as Exhibits 3 and 4.

**META'S POSITION**

Plaintiffs seek, via their Subpoena to non-party law firm BSF,[1] ***all testimony*** and ***all discovery*** that Meta provided in the unrelated *Kadrey* action, while simultaneously seeking those same materials directly from Meta via requests for production in this case. Specifically, the Subpoena seeks from *Kadrey*: (i) all of Meta's responses to written discovery; (ii) all documents produced by Meta; (iii) all of Meta's Rule 26 disclosures; and (iv) all deposition transcripts, whether the deponent was a Meta witness, named plaintiff, or third party. In total, this production would amount to over 20 terabytes of sensitive information belonging to Meta and third parties. Ex. 1 at 7. These voluminous materials are sought irrespective of any claimed or actual relevance to the issues in *this* case. Even worse, Plaintiffs served their Subpoena the same day they served identical requests on Meta seeking the exact same overbroad discovery. Ex. 2 at 4-8.

The Subpoena is fundamentally improper under the Federal Rules of Civil Procedure ("Rules") and the law in this circuit for two independent reasons. First, in violation of Rule 45, the Subpoena impermissibly seeks voluminous documents from non-party BSF that are necessarily in Meta's possession, implicate confidentiality and notice obligations Meta owes to third parties under the Protective Order in *Kadrey*, and are simultaneously being sought from Meta. Second, the request for *all* materials produced in *Kadrey* irrespective of any showing of relevance to this case constitutes impermissible "cloned discovery" that is routinely rejected in the Ninth Circuit. Meta raised both objections with Plaintiffs in meet and confer, but they refused to withdraw the Subpoena. Accordingly, Meta respectfully seeks a protective order prohibiting enforcement of the Subpoena. Any meet and confer over Plaintiffs' requests should occur solely in the context of Plaintiffs' discovery requests to Meta, and any disputes between the parties should be resolved in accordance with this Court's procedures if and when those discussions reach impasse.

## I. THE COURT HAS BROAD DISCRETION TO ENTER A PROTECTIVE ORDER

The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by prohibiting disclosure or discovery, preventing inquiry into certain matters, or limiting the scope of disclosure or discovery

[1] BSF is not a party in *Kadrey*; it is one of the law firms representing named plaintiffs in that action.

to certain matters. Rule 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Although a party typically "cannot object to a subpoena duces tecum served on a nonparty," parties may seek a protective order to quash or otherwise prevent improper use of third-party subpoenas. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (granting defendant's motion to quash subpoena where requests were more appropriately directed to defendant); *Huynh v. Wal-Mart Assoc., Inc.*, 2019 WL 13221170, at *2 (N.D. Cal. Aug. 1, 2019) (granting protective order quashing third-party subpoenas as disproportionate to needs of the case); *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) (a party may seek a protective order under Rule 26(c) "if it believes its own interest is jeopardized by the discovery sought from [a] nonparty"). The Court should exercise its discretion to quash the Subpoena in its entirety.

## III. THE COURT SHOULD ISSUE A PROTECTIVE ORDER QUASHING THE SUBPOENA

### A. The Requested Documents Should Be Sought Solely from Meta, Not BSF

It is a fundamental tenet of third-party discovery that a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed R. Civ. P. 45(d)(1). As this Court has recognized, "[c]ourts frequently limit discovery sought from non-parties when the requesting party could seek the same information from another party in the litigation." *Guardant Health Inc. v. Personal Genome Diagnostics, Inc.*, 2019 WL 13243011, at *3 (N.D. Cal. July 22, 2019) (van Keulen, J.) (collecting cases). For example, in *Nidec Corp v. Victor Co. of Japan*, the court granted the defendant's motion to quash a third-party subpoena served by the plaintiff, reasoning that there was "simply no reason to burden nonparties when the documents sought are in possession of the party defendant." 249 F.R.D. 575, 577 (N.D. Cal. 2007).

Here, *all* of the materials sought in the Subpoena are indisputably in Meta's possession, custody, or control, or in the case of materials designated by the *Kadrey* plaintiffs or third parties as "Attorneys Eyes Only," that of Meta's counsel. *See* Ex. 1 at 7 (requesting "All responses to written discovery requests … **provided by Meta**"; "All DOCUMENTS **produced by Meta**"; "All disclosures … **made by Meta**"). Moreover, contrary to Plaintiffs' assertion, Meta's responses and

objections did not state outright that it "will not produce any of the requested documents." Rather, Meta offered to meet and confer on Plaintiffs' requests to ascertain whether any specific components of the *Kadrey* materials sought (*e.g.*, documents identifying the IP addresses associated with the servers referenced in *Kadrey*) might be relevant and proportionate to the needs of this case—a discussion that has not yet occurred despite Meta's invitation.

Plaintiffs offer no legitimate justification for seeking the *Kadrey* materials from non-party BSF, rather than from Meta through normal party discovery, because there is none. Indeed, the only reason Plaintiffs provided in meet and confer for serving the same discovery requests on both Meta and BSF is that they want a means of conducting an "accounting" to confirm that Meta's production is "complete." This puts the cart before the horse and is wrong, as it presumes both that Plaintiffs are entitled to a full clone of the *Kadrey* record when they are not (see below), and that Meta will not comply with its own discovery obligations or orders of this Court. Plaintiffs should not be permitted to abuse Rule 45 based on unfounded speculation about Meta's future conduct.

To the extent Plaintiffs are entitled to any documents from *Kadrey*, that production can and should come solely from Meta, with any disputes resolved as between Plaintiffs and Meta. This is particularly important here, where the documents sought implicate not only burden, relevance, and proportionality concerns, but also privacy interests of third parties to whom Meta owes contractual obligations of notice and confidentiality that must be complied with in accordance with the Protective Order in *Kadrey* before any production.[2] Plaintiffs' Subpoena to BSF is nothing more than an attempt to circumvent Meta's legitimate objections, while simultaneously burdening a non-party in violation of Rule 45. The Court should issue a protective order for this reason alone.

**B. The Subpoena Seeks Irrelevant and Impermissible Cloned Discovery**

The Court should also issue a protective order for the independent reason that the Subpoena seeks expansive "cloned discovery" irrespective of any relevance to the issues in *this* case. "Cloned discovery" refers to requests for all documents produced in other litigation or investigations. *See Tristan v. Bank of Am., N.A.*, 2024 WL 5412486, at *2 (C.D. Cal. June 10, 2024); *King Cty. v.*

---

[2] Consistent with the Court's Civil and Discovery Referral Matters Standing Order, Meta has not included a declaration attesting to this or other extra-record facts, but would be happy to do so if the Court believes it would be helpful to resolution of this dispute.

*Merrill Lynch & Co., Inc.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). Courts in this Circuit routinely reject requests for production of cloned discovery from another case, even where there is some overlap of facts or issues. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practice, and Prods. Liab. Litig.*, 2017 WL 4680242 (N.D. Cal. Oct. 18, 2017) (denying request for cloned discovery where the plaintiffs "have not explained how the entire MDL Production is relevant to a claim or defense *in their case*") (emphasis added); *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) (rejecting request for all discovery produced by Ampco in state wage-and-hour cases because "certain similarities between the state cases and this case … are not enough to require a carte blanche production of all documents from the state cases").

Here, there is, at best, only superficial overlap between the facts at issue in *Kadrey* and this case, making cloned discovery particularly inappropriate. Among other critical differences:

- *Kadrey* is a putative class action brought on behalf of book authors, while this case is brought by two adult film companies who claim to own copyrights in videos.
- *Kadrey* has nothing to do with video or video models. The *Kadrey* plaintiffs allege that Meta downloaded large text datasets containing their books via direct download and via torrenting from specific websites between 2022 and 2024. None of that activity or voluminous data would be relevant here, where Plaintiffs contend that Meta torrented their videos one-by-one from unspecified locations on the internet beginning in 2018 using some sort of script not at issue in *Kadrey*.
- Most of the evidentiary record in *Kadrey* was directed to whether Meta's undisputed use of plaintiffs' books to train large language models was fair use (it was—*see Kadrey*, 788 F. Supp. 3d 1026), whereas this case turns on *disputed* allegations that Meta torrented Plaintiffs' videos to train *video* models (it did not).

The overbreadth of the Subpoena is evident on its face. For example, Request No. 3 seeks "All transcripts of deposition testimony provided in connection with THE KADREY LITIGATION." Ex. 1 at 7. This encompasses not only Meta's testimony on numerous unrelated matters, but deposition transcripts of the *Kadrey* plaintiffs, whose testimony about their books, publishing agreements, royalty statements, and claims of market harm can have no bearing whatsoever on this case. Equally irrelevant is the voluminous discovery describing how Meta torrented *specific large datasets of books* to train its Llama 1, 2, and 3 *language* models; none of which is at issue here. This case is solely about whether Meta torrented or directed the torrenting of Plaintiffs' adult *videos* (it did not). Plaintiffs do not identify anything in the *Kadrey* record that might speak to that core

question, which will be answered (in the negative) by other discovery in this case. Plaintiffs bear the burden of demonstrating relevance; they cannot do so here for most of the material sought.

Further, while seeking a full clone of the *Kadrey* record from Meta is inappropriate in this case, Plaintiffs' attempt to obtain it from BSF is even more problematic. *See FTC v. DIRECTV, Inc.*, 2015 WL 8302932, at *4 (N.D. Cal. Dec. 9, 2015) (granting FTC's request for protective order and noting that "permissible discovery from nonparties is narrower than that permitted from parties to the action"). Again, Rule 45(d)(1) cautions parties to "avoid imposing undue burden or expense on a person subject to the subpoena." Requiring non-party BSF to produce the exceptional volume of highly sensitive discovery from *Kadrey* (more than 20 terabytes) as part of an expensive fishing expedition for, at best, marginally relevant material is simply not permitted under the Federal Rules.

Plaintiffs' proffered justifications for flouting Rule 45 here all fail. First, Plaintiffs cite *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 2024 WL 3416644 (N.D. Cal. July 14, 2024) as permitting cloned discovery, but that case is easily distinguished. In *Uber*, the Court noted that there was not even a "need to formally request documents" from the other action, because a court order "already contemplated production" in the MDL involving substantially identical claims, and unlike here, the third party did not object to the subpoena. *Id.* at *2-3, 8. Second, contrary to Plaintiffs' representations, BSF *does* object. BSF partner Max Pritt confirmed in writing on July 14, 2026 that BSF "agree[s] that *Meta* should be the one to produce its own documents in the case" and specifically "reserve[s] any and all objections we may have to the subpoena." Third, while *Meta* has produced some of the *Kadrey* discovery to plaintiffs in *Entrepreneur*, *Cambronne*, *Chicken Soup*, and *Cognella* pursuant to a stipulated court order, those cases arise from Meta's use of the same *text* datasets to train Meta's *language* models, and, thus, have been formally related to *Kadrey*. This case has *not* been related to *Kadrey* under L.R. 3-12, because it is not. Plaintiffs' demand here for even broader discovery from a non-party in an unrelated case should be rejected.

## IV. CONCLUSION

Meta respectfully requests that the Court enter a protective order quashing the Subpoena (*see* Exhibit 3). The parties should meet and confer on Meta's objections to the identical requests to Meta and bring any disputes that remain unresolved to the Court in accordance with its procedures.

**PLAINTIFFS' POSITION**

# I. THE COURT SHOULD DENY META'S MOTION FOR A PROTECTIVE ORDER

## A. Introduction and Background Facts

This lawsuit is one of many that concerns Meta's deliberate infringement of intellectual property rights in order to obtain data to train its AI models, including Meta Movie Gen and the Large Language Model known as "LLaMA."[3] These cases and the present case share the allegation that Meta infringed copyrights using file sharing networks as a means to acquire the massive amount of data that Meta needs to compete against other companies as it vies for advantage in the ongoing and hotly contested AI race. *See* Dkt. No. 70 ("FAC"), ¶¶ 5–8. Meta apparently calculated that the potential revenue it will gain in the future if it outmaneuvers its competition outweighs the financial risk of the lawsuits flowing from its illegal activity (and the financial costs to Meta to lawfully purchase rights to the content it desires).

The allegations by the plaintiffs in the various cases against Meta are well-founded. Meta admitted in the *Kadrey* case that Meta used hundreds of thousands of pirated books it obtained through BitTorrent to train LLaMA. *Id.* at ¶ 53. And records that are publicly available in connection with the *Kadrey* case show Meta's employees and agents downloaded over 81.7 terabytes of pirated books and academic papers using BitTorrent protocols. *Id.* at ¶ 54. Plaintiffs in the instant case additionally allege that their investigation of Meta's infringing and torrenting activity has revealed 47 IP addresses belonging to Meta that were used to torrent Plaintiffs' films 165 times in the time period 2018 through 2025. *Id.* at ¶¶ 56, 77, 109, 110. Plaintiffs also identified systems and networks that were used by Meta (but not directly owned by Meta) to engage in the same conduct. *Id.* at ¶ 94. In all, Meta has infringed 2,973 of Plaintiffs' works thousands of times. *Id.* at ¶¶ 108, 109 & Exs. E–F. The Court has determined that Plaintiffs' allegations are plausible

[3] *See Kadrey, et al. v. Meta Platforms, Inc.*, No. 23-cv-03417-VC (N.D. Cal.); *Chabon, et al. v. Meta Platforms, Inc.*, No. 3:23-cv-04663-VC (N.D. Cal.); *Huckabee, et al. v. Meta Platforms, Inc., et al.*, No. 3:23-cv-06663-VC (N.D. Cal.); *Farnsworth, et al. v. Meta Platforms, Inc.*, No. 3:24-cv-06893-VC (N.D. Cal.); *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 3:25-cv-09579-VC (N.D. Cal.); *Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*, No. 3:26-cv-02333-VC (N.D. Cal.); *Cambronne v. Meta Platforms, Inc.*, No. 5:26-cv-03725-PCP (N.D. Cal.); *Cognella, Inc. v. Meta Platforms, Inc.*, No. 3:26-cv-04053-JST (N.D. Cal.); *Elsevier Inc., et al. v. Meta Platforms, Inc. and Mark Zukerberg*, No. 1:26-cv-03689-PKC (S.D.N.Y.).

in light of the evidence Plaintiffs have already been able to gather. (Dkt. No. 61, at p.9–11 (denying motion to dismiss). The district court in the present case also stated that Meta's admissions in the *Kadrey* case about torrenting the literary works at issue there supports Plaintiffs' allegation that Meta similarly torrented Plaintiffs' films. *Id.* at p.11 ("Additionally, Defendant has acknowledged that it used six VPCs to torrent archives for the purposes of acquiring data, which supports Plaintiffs' allegation that Defendant used VPCs to torrent additional files, including their films.").

Importantly, the plaintiffs in the *Kadrey* case assert in a filing occurring just weeks ago on June 25, 2026, that Meta, after the close of fact discovery, produced additional records "revealing (i) additional torrenting by employees not previously disclosed, and (ii) Meta's treatment of torrented works." (Dkt. No. 751 in *Kadrey* at p. 5). The filing is heavily redacted for unknown reasons, but enough is revealed to conclude Meta's employees were engaged in widespread torrenting and the employees "discussed ways to hide it." *Id*. Of course, Meta disputes this, but there is no escaping the conclusion that evidence important to Plaintiffs' claims in this case has been produced by Meta in the *Kadrey* case.

Plaintiffs seek (and are entitled to) the complete compliment of evidence produced by Meta concerning its torrenting activities, including those activities that concern data that has been gathered to train Meta's AI models. The evidence is relevant to learn the extent of Meta's torrenting, the purposes for which Meta torrented, the means by which Meta torrented, the infrastructure and IP addresses used by Meta to torrent, and the identity of Meta's employees who were involved in torrenting. Contrary to Meta's denial, its refusal to produce all of the documents at issue is in writing. *See* Ex. 2.

The distinctions Meta attempts to draw between the facts and issues in *Kadrey* to the present case are unavailing. Meta needs video-based data to train certain of its AI models. *See* FAC at ¶¶ 38–52. But even if there is not direct benefit to Meta in using Plaintiffs' films to train Meta's various AI models, the value that Plaintiffs' films garner in the torrent markets provides sufficient motivation to Meta to intentionally target Plaintiffs' films. *Id.* at ¶¶ 8, 33.

**B. Plaintiffs' Subpoena Properly Seeks Relevant And Discoverable Information From A Third-Party**

The present case is very similar to *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*, No 23-3084, 2024 WL 3416644 (N.D. Cal. Jul. 14, 2024). In that case, the plaintiffs served subpoenas seeking documents from thirty non-parties, including an attorney named Sara Peters who had previously filed a lawsuit against the defendants asserting claims similar to the allegations made by the plaintiffs. *Id*. at *1, 7. The plaintiffs' subpoena to Ms. Peters sought all documents, videos and audio, and deposition transcripts that Ms. Peters received in connection with the prior case in which she sued the defendants. *Id*. at *8. Ms. Peters did not object to the plaintiffs' subpoena. *Id*. at *1. Like Meta, the defendants argued that the plaintiffs should obtain the requested information from the defendants in the ordinary course of "party discovery." *Id*. at *8. Also like Meta, the defendants argued that the plaintiffs' subpoena to Ms. Peters sought improper "cloned discovery requests." *Id*. The Court first noted the obvious relevance of the requested documents because of the similarities in the allegations made in the different cases. *Id*. The Court then proceed to reject all of the defendants' arguments, and found that the plaintiffs did not need to specifically request the documents at issue from the defendants before obtaining the documents from a non-party pursuant to a subpoena, particularly where the non-party did not object to the subpoena. *Id.*

**C. Plaintiffs' Subpoena Will Not Overly Burden BSF, And Meta Does Not Have Standing To Raise Any Concerns About Burden To BSF**

Meta's leading argument is that BSF will be overly burdened if required to comply with Plaintiffs' subpoena. Meta does not have standing to challenge Plaintiffs' subpoena to BSF based on undue burden. *In re Malibu Media Copyright Infringement Litig.*, No. 15-4170, 2016 WL 926906, at *4 (N.D. Cal. Mar. 11, 2016) (citing *Mt. Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012) ("[T]he 'undue burden' language is limited to harms inflicted by complying with the subpoena . . . ."). That is because "[g]enerally, 'a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some *personal right or privilege* with regard to the documents sought.'" *Strike 3 Holdings, LLC v. Doe*, No. 23-5488, 2024 WL 1643703, at *2 (N.D. Cal. Apr. 15, 2024) (citations omitted) (emphasis in

original). Because of this, "a party's objection that a subpoena to a nonparty seeks irrelevant information, or that it would impose an undue burden, are not grounds on which that party can base standing to move to quash a subpoena when the nonparty has not objected." *Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-014165, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019). A party may, however, seek a protective order pursuant to Rule 26(c) if the party believes *the party's interests* are jeopardized by discovery sought from the non-party. *Id*.

Meta's assertion that it "may seek a protective order to quash or otherwise prevent improper use of third-party subpoenas" misstates the cases relied on. The truncated quote presented from *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) discusses Rule 45(d)(2)(B)–the "person commanded to produce documents" option to serve objections to a subpoena–and not a party's standing to raise objections on the non-party's behalf. When no objections are made by the non-party, "any objections have been waived" unless a court finds "unusual circumstances." *See id.* (citations omitted). The *Huynh v. Wal-Mart Assocs., Inc.* case was such a circumstance because the plaintiff served subpoenas on thirteen companies as well as four lawyers who represented Wal-Mart in that matter. No. 18-1631, 2019 WL 13221170, at *1 (N.D. Cal. Aug. 1, 2019). In *Moon*, however, the Court found the discovery requests "overbroad on [their] face and exceed[ ] the bounds of fair discovery[.]" 232 F.R.D. at 637. The Court also found the subpoena unusual because "plaintiffs have not shown they have attempted to obtain these documents from defendant[.]" *Id.* at 368. Neither case considered the standing requirement at issue here.

The second problem with Meta's argument is that BSF has not asserted *any* objection to Plaintiffs' subpoena. On June 26, 2026, Plaintiffs' counsel spoke with Maxwell Pritt (a partner with BSF and one of the lead attorneys representing the plaintiffs in the *Kadrey* case) who stated that his firm intends to fully comply with the subpoena if Meta's motion to quash is denied. Mr. Pitt did not raise any concerns, including with burden, in complying with the subpoena. Meta's last-minute attempt to manufacture an objection from BSF misses the mark. Indisputably, BSF has not filed a motion to quash, nor has it served any party with objections pursuant to Rule 45(d)(2)(B). An email from Mr. Pritt stating that he believes Meta should produce its own documents and that BSF "reserves its rights" is not an objection to Plaintiffs' subpoena.

Finally, Meta has not made any showing in support of its assertion. As the party seeking a protective order, Meta bears the obligation to show "annoyance, embarrassment, oppression, or undue burden or expense" (Fed. R. Civ. P. 26(c)), and that "specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002) (citations omitted). Meta's late proffer at n.2 to submit a declaration is untimely because Meta has not sought "prior leave" to do so under § 7(b) of this Court's applicable standing order. Moreover, these reasons were never mentioned in any of the parties' conferrals. *See* Fed. R. Civ. P. 26(c).

Like any large and sophisticated law firm, BSF undoubtedly uses one or more databases to store the documents responsive to Plaintiffs' subpoena. Gathering and producing the requested materials can be done by a paralegal or other qualified legal assistant spending a few hours using the databases to identify the requested documents, and then uploading them to one or more flash drive or other method of transferring the data to Plaintiffs.

Meta makes only a passing assertion that the Court should quash Plaintiffs' subpoena because of privacy interests of third parties to whom Meta owes obligations of notice and confidentiality under the protective order entered in *Kadrey*. But Meta fails in its burden to show that any concerns cannot be satisfied by adhering to the protective order entered in this case (Dkt. No. 64) and the protective order entered in the *Kadrey* case (Dkt. No. 90 in the *Kadrey* action).

### D. Plaintiffs May Obtain Discovery from The *Kadrey* Case

There is no general prohibition against obtaining discovery that was produced in a separate action, or heightened requirement to obtain discovery from another case. Courts allow discovery of documents produced in prior litigations or investigations that have "significant factual and legal overlap" with the present case. *See Strategic Partners, Inc. v. FIGS, Inc.,* No. 19-2286, 2020 WL 4354172, at *9 (C.D. Cal. May 18, 2020) (collecting cases); *In re Uber Technologies*, 2024 WL 3416644, at *8. Meta's argument is particularly disingenuous here since it offered to share with the plaintiffs in all cases that have been related to *Kadrey* all discovery taken from Meta and Meta's former employees in order to "lessen the burden amongst the parties and promote judicial economy across the cases." (Dkt. No. 749 in *Kadrey*, at p.11.).

Dated: July 15, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Angela L. Dunning*
Angela L. Dunning

CLEARY GOTTLIEB STEEN
& HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
SAMUEL BLANKENSHIP (339905)
sblankenship@cgsh.com
KIMBERLY BITTINGER (359907)
kbittinger@cgsh.com
151 University Avenue
Palo Alto, CA 94301
Telephone: +1 (650) 815-4100

CLEARY GOTTLIEB STEEN
& HAMILTON LLP
THOMAS W. YEH (287118)
tyeh@cgsh.com
650 California St., Suite 2400
San Francisco, CA 94108
Telephone: +1 (415) 796-4400

Attorneys for Defendant
META PLATFORMS, INC.

Dated: July 15, 2026

WAUGH PLLC

/s/ *Christian W. Waugh*
Christian W. Waugh

Christian W. Waugh (FL SBN 71093)
WAUGH PLLC
201 E. Pine Street, Ste. 315
Orlando, FL 32801
Telephone: (321) 800-6008
Email: cwaugh@waugh.legal

Trey Brown (SBN 314469)
In-House Counsel
Strike 3 Holdings, LLC
11271 Ventura Blvd., Ste. 717
Los Angeles, CA 91604
Telephone: (323) 347-4271
Email: trey@strike3holdings.com

Jeremy J. Thompson (MN SBN 402173)

The Law Office of Jeremy J. Thompson PLLC
5200 Wilson Road, Ste. 150
Edina, MN 55424
Telephone: (952) 952-1883
Email: jeremy@jthompson.law

Lincoln D. Bandlow, Esq. (SBN 170449)
Law Offices of Lincoln Bandlow, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9680
Email: Lincoln@BandlowLaw.com

Brian S. Ginter (SBN 265786)
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Telephone: (213) 236-0600
E-mail: bginter@bwslaw.com

Attorneys for Plaintiffs STRIKE 3 HOLDINGS, LLC and COUNTERLIFE MEDIA, LLC

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 15, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ *Angela L. Dunning*
Angela L. Dunning

Attorneys for Defendant
META PLATFORMS, INC.