[Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company, and COUNTERLIFE MEDIA, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>Defendant. | Case Number: 5:25-cv-06213-EKL<br><br>**MID-DISCOVERY CASE MANAGEMENT STATEMENT** |

Pursuant to this Court's Standing Order for Civil Cases, and the Court's Case Management and Scheduling Order (ECF No. 52), counsel for Plaintiffs Strike 3 Holdings, LLC, and Counterlife Media, LLC (collectively, "Plaintiffs"), and counsel for Defendant Meta Platforms, Inc., ("Meta") (together, the "Parties"), hereby submit this Mid-Discovery Joint Case Management Statement.

**1. STATUS OF THE CASE**

**Discovery.** The parties have completed the exchange of initial disclosures and written discovery and have made their respective first document productions. The parties have stipulated to a Protective Order (ECF No. 62) and an ESI Protocol (ECF No. 63), both of which have been entered by the Court. The parties have exchanged their initial custodians. **ADR.** On July 23, 2026, the parties completed their initial ADR session, in advance of the Court's August 3, 2026 deadline. **Upcoming Deadlines.** The next scheduled case management conference is set for January 27, 2027, and the close of fact discovery is set for March 4, 2027.

***Plaintiffs' Position***:

Plaintiffs have produced over 100,000 ESI files and documents to Meta relating to Meta's First Request for Production of Documents ("RFPs," generally) and Plaintiffs' Initial Disclosures comprising of approximately 40 TB of information. Meta has produced 205 documents to

Plaintiffs. To date, the Parties have conferred on May 26, June 2, June 5, June 23, July 14, and July 29 on their discovery issues. Plaintiffs anticipate some of the current discovery issues will likely may necessitate intervention by the Court. Those disputes are highlighted below.

(1) Plaintiffs' Offensive Discovery: On March 27, 2026, Plaintiff Strike 3 Holdings served its First Set of RFPs and Interrogatories. For Strike 3's RFPs, Meta objected to every request–down to the definition of "ACTION." It also initially refused to search for responsive material to any of the 102 RFPs. Meta avers that it "has not refused to produce documents," yet its supplemental responses (served August 7, with no concurrent production) unambiguously state that "Meta will not search for or produce documents" for the majority of its RFP responses. To date, Meta's document production has been limited to documents associated only with Meta's "MovieGen" and Meta's "Acceptable Use Policy" and contain unexplained redactions. Yet it continues to evade relevant discovery into other departments and models, including Reality Labs.

Meta also produced five documents relating to its ownership of the IP addresses on Plaintiffs' Exhibit A but none of the documents provide evidence to Plaintiffs' RFPs such as: (1) which individuals, department, of office had access to the IP addresses; (2) how long the IP addresses were assigned to a particular location; (3) whether the IP addresses are available to the public, at a data center requiring particularized logins, or for some other use; (4) the purpose of any of the IP addresses (i.e. for employee VPN login, for crawling, for guest use, or any other of the myriad of possibilities Meta's IP addresses may be used); or (5) any other relevant information that would enable Plaintiffs to continue to conduct meaningful discovery. Importantly, all documents Meta has produced relating to Meta's IP addresses appears to consist of information that is otherwise publicly available, despite Meta's designation as "attorneys' eyes only."

On August 7, Meta provided supplemental responses to Strike 3's RFPs. For the first time, Meta agreed it would "conduct a reasonable search" of 28 of Plaintiffs'102 RFPs. Meta has not stated whether it will actually produce additional documents.

Turning to the interrogatories, after initially serving unverified responses, on July 17, Meta supplemented them with: (1) the names of individuals that contributed to its interrogatory

responses; (2) verifications of the interrogatories; and (3) the identities of five current and/or previous employees of Meta who it claims "interacted" with Plaintiffs' motion pictures. Meta now seeks to claw back these identities, claiming they were produced inadvertently, were not relevant, and were attorney work product. Plaintiffs will confer as they cannot understand how the identity of any Meta employee who "interacted" with Plaintiffs' motion pictures (at exact dates and times) is not relevant and otherwise appropriate for redaction, particularly given that the Parties have stipulated to a protective order that provides ample privacy protections.

Meta still refuses to answer interrogatory responses relating to: individuals at Meta who developed and/or used torrenting software; IP addresses that were used by Meta to access BitTorrent or peer-to-peer software; the individuals, including name, title and department, who accessed Meta's corporate IP addresses in Plaintiffs' Complaint; security measures in place to access the IP addresses in Plaintiffs' Complaint; databases at Meta that contained torrented files; steps or processes Meta undertook to preserve relevant information; and any files or documents associated with the interrogatories which Meta did provide limited and often purposefully unrelated or disingenuous responses. For example, Plaintiffs asked Meta for a list of IP addresses owned or controlled by Meta that its employees used to access the BitTorrent network. Meta's response claims that it is "not aware" of any IP addresses used to torrent Plaintiffs' Works, improperly re-writing Plaintiffs' previously relevant interrogatory and then refusing to provide any documents to support its statement on the basis of objections to Plaintiffs' definition of "files" and "identify."[1]

Meta's refusal to produce or respond to basic discovery requests unnecessarily delays the case. Meta's position appears to boil down to: "we don't think your request is valid, so we are

---

[1] As another example, to Plaintiffs' request to identify security measures required to access the IP addresses on Plaintiffs' Exhibit A to its Amended Complaint, Meta amended its initial response to identify some of the IP addresses as being associated with Onavo VPN, a prior VPN Meta sold to consumers. However, other than identifying the IP addresses as being associated with Onavo VPN, Meta provides no documentation demonstrating that the IP addresses were used by VPN customers nor the extent of Meta employee involvement (which appears to be significant). *See e.g. Facebook Snooped on users' Snapchat Traffic in Secret Project, Documents Reveal* TECH CRUNCH, (March 26, 2024) https://techcrunch.com/2024/03/26/facebook-secret-project-snooped-snapchat-user-traffic/.

going to ignore it and you need to trust us that it is not valid." But Plaintiffs have a right to discovery on their claims. It bears repeating that after months of discovery, and only after multiple conferrals has Meta finally agreed to search for responsive materials to some of Plaintiffs' requests. At this rate, Plaintiffs are concerned that they will be unable to gain meaningful discovery prior to the close of fact discovery.

Plaintiffs have served some third-party subpoenas and plan on serving more, but to avoid duplication, Plaintiffs are first attempting to determine what information may be in Meta's possession. Plaintiffs have not yet scheduled depositions, because Meta has made it difficult to identify witnesses (and now seeks to claw back several of them). Plaintiffs will likely schedule a Rule 30(b)(6) deposition soon to attempt to gain some information, particularly if Meta does not produce any more documents.[2] Despite Meta's stonewalling, Plaintiffs will continue to confer in good faith.

(2) Plaintiffs' Discovery Responses and Production: Plaintiffs have produced over 100,000 files and documents related to Meta's RFPs consisting of roughly 40TB of data. Additionally, Plaintiffs have produced responses to Meta's interrogatories. Because Plaintiffs allege Meta infringed multiple versions of its motion pictures, Plaintiffs have produced an infringing copy of each of Plaintiffs' motion pictures associated with each BitTorrent hash. Plaintiffs have also produced records of all of the torrenting activity and data associated with the IP addresses on Exhibits B and C allowing Meta the fully opportunity to examine Plaintiffs' Exhibits.

Plaintiffs are in the process of amending some of its interrogatories and RFPs as well as producing hundreds of more documents. Meta demanded that Plaintiffs complete these amendments by August 7, 2026, but Plaintiffs were only formally notified of several of Meta's requests to amend on August 3, 2026, and Plaintiffs were unable to complete the large production in a short period of time. In order to respond, Plaintiffs needed to carefully calibrate

[2] Plaintiffs are concerned they will incur substantial costs associated with the preparation and attendance at deposition to only receive the same objections and stonewalling on relevant information.

their response with supplemental production, which was served today. Meta is also demanding Plaintiffs waive work-product and attorney client privileged objections, which requires Plaintiffs to carefully consider the case law the Parties have exchanged regarding waiving its privilege objections. Plaintiffs intend to amend their interrogatories and requests for production and produce more documents by Monday August 17, 2026. Plaintiffs will continue to confer in good faith.

(3) Custodian Designation: Plaintiffs have designated three individuals from its company for custodial designation. Plaintiffs notified Meta of its custodian designations in a meet and confer on July 29, 2026, and Meta did not oppose them. Meta has also designated three individuals; however, Plaintiffs have asked Meta to designate an individual from Reality Labs as well. To date, Plaintiffs are aware of individuals from Reality Labs with relevant information relating to this case including (1) the contractor who infringed Plaintiffs' Works referenced in Plaintiffs' Amended Complaint; and (2) Arrigo Benedetti, a former "computer vision" contractor who worked for Reality Labs that Meta identified in the *Kadrey* lawsuit as having downloaded a file from Plaintiffs' Exhibits B/C (*Kadrey* ECF No. 758).[3] Meta has agreed to designate the contractor in Plaintiffs' First Amended Complaint as a custodian, but only for purposes of the individual's information, and not any information relating to Reality Labs. Plaintiffs are concerned this may enable Meta to avoid discovery obligations and turn a blind eye to relevant information. This concern is augmented in light of Meta's refusal to provide information relating to preservation efforts. Plaintiffs will continue to confer in good faith.

(4) Conclusion: Discovery is not at its "early stages." This mid-discovery statement comes after months of conferrals, and, even so, Meta has only recently agreed to "search for" some materials. These oblique and evasive commitments impede meaningful discovery. Since joint statements such as this hold parties accountable by requiring them to make affirmations to the Court (and not just in conferrals), they are productive to both sides. Plaintiffs believe the parties would benefit from the Court requiring additional joint statements before discovery ends.

[3] Plaintiffs are aware of other information relevant to this issue but because it is subject to Meta's dubious "claw back" request, Plaintiffs cannot explain it here.

***Meta's Position:***

At the outset, Meta notes that the purpose of this Mid-Discovery Case Management Statement is to "address the status of the case and any other matters that warrant the Court's attention." Standing Order at 3. Under the Court's Standing Order, "[i]f any party believes a conference is needed, the party shall identify the issue(s) that require the Court's attention, explain the basis for the request, and detail the efforts that the parties have made to address or resolve the issue." *Id.* Plaintiffs' portions of this joint submission confirm that no conference is currently required: Plaintiffs merely preview that certain issues "may necessitate intervention" by the Court at some future point. Meta agrees that no such intervention is warranted at this time. The parties continue to engage in meet-and-confer discussions, and if any genuine disputes emerge from those discussions, they will be raised with the Magistrate Judge through the established procedures at the appropriate time. That should end the matter. Plaintiffs' portion of the statement, however, contains numerous unnecessary and inaccurate accusations, and arguments to which Meta briefly responds below to clarify and correct the record.

<u>Meta's Discovery Responses and Productions:</u> Plaintiffs' characterization of Meta's discovery conduct is inaccurate for several reasons. ***First,*** Meta has not refused to produce documents. To the contrary, Meta's document production to date has included substantive evidence directly relevant to the claims in this case, including (i) evidence showing the IP ranges associated with the servers referenced in the *Kadrey* litigation do not match the IP addresses identified in Plaintiffs' Complaint, (ii) documents concerning Movie Gen (the only model Plaintiffs pointed to in their Complaint as allegedly having been trained using their content), including documents showing that Movie Gen was not trained on any of Plaintiffs' works, and (iii) documents reflecting Meta's content-filtering protocols designed to ensure that adult content like Plaintiffs' works were not sourced or used for AI training at Meta. Meta has also committed to search for and produce numerous other documents, including relevant materials from the *Kadrey* matter; conducting a search regarding Llama 4, V-JePA 2, SlowFast, Ego4D, Make-A-Video AI, and ImageBind (other models referred to in passing in the Complaint); and searching

in Meta's AI Data Catalog at Plaintiffs' request. Meta expects to continue producing responsive documents over the coming weeks.

***Second***, Meta has not failed to respond to "basic" discovery requests.[4] Plaintiffs propounded 102 Requests for Production, including many overbroad requests seeking, for example, all documents reflecting any BitTorrent activity by any Meta employee or contractor anywhere in the world over an eight-year span, and all cloud accounts used by Meta globally. Meta appropriately objected to such requests as not relevant or proportionate to the needs of the case, including because Meta uses BitTorrent, among other things, to provide software updates to its customers and uses cloud storage for myriad purposes having nothing to do with the allegations in this case. Setting aside the breadth of Plaintiffs' requests, Meta has agreed to search for and produce documents to the extent they are relevant and proportionate to the needs of the case. The parties continue to meet and confer regarding the remainder of these requests.

Fact discovery remains in its early stages. The parties have exchanged initial proposed ESI custodians, are meeting and conferring about those individuals, and will shortly begin collecting, reviewing, and producing custodial ESI. The pace of Meta's investigation reflects the complexity of a thorough inquiry across a large, global organization into facts and allegations that appear unsupported, not any refusal to cooperate. Meta will continue to proceed in good faith.

Meta's Interrogatory Responses: Meta responded to Plaintiffs' First Set of Interrogatories on April 27, 2026, served supplemental responses on July 17, 2026, and served corrected supplemental responses on August 12, 2026. The parties have not yet met and conferred on these most recent responses, though Meta is prepared to do so. Accordingly, any "dispute" is not ripe for this Court's consideration, including with respect to the clawback issue which the parties have not yet met and conferred on.Moreover, the parties had agreed to exchange amended and/or supplemental written discovery responses by August 7. Meta complied with this deadline and served further supplemental responses on that date. Plaintiffs also agreed to amend their responses to Meta's initial sets of interrogatories and document requests on August 7, but failed to do so.

[4] As Plaintiffs acknowledge, the only discovery dispute adjudicated by the Magistrate Judge to date was Meta's motion to quash Plaintiffs' subpoena to a third-party law firm, which was granted.

Plaintiffs then unilaterally represented that they would serve amended responses on August 17, 2026, providing no explanation for violating the parties' agreement. Plaintiffs served their amended responses to Meta's interrogatories right before this statement was filed, but did not serve amended responses to Meta's document requests, as agreed. Meta anticipates further meet and confer with Plaintiffs on both sets of responses.

Custodians: On July 24, 2026, the parties agreed to exchange custodians on August 7, 2026. The parties had an initial discussion about custodians on July 29, 2026, but Plaintiffs identified only two of their three proposed custodians by full name and indicated that they would confirm their designations in writing. Pursuant to that agreement, Meta disclosed its initial custodian designations in writing on August 7. Plaintiffs did not, and offered no explanation for failing to comply with the parties' agreement. Instead, Plaintiffs disclosed their custodians five days later, on August 12, 2026. Two of Plaintiffs' three proposed custodians are in-house counsel of Strike 3's parent company. Due to Plaintiffs' delay, the parties have not yet met and conferred on their respective proposals. While Meta has concerns regarding Plaintiffs' designations (which Meta first identified during the call on July 29), Meta expects to address them through the ongoing meet-and-confer process. While the parties are also still meeting and conferring about Meta's proposed custodians, Meta notes here that Plaintiffs' repeated reference to Reality Labs is a red herring, as the single employee/contractor identified in the Complaint as having worked at Reality Labs is one of Meta's agreed upon custodians. Accordingly, Plaintiffs' assertion that Meta seeks to "evade relevant discovery into other departments and models, including Reality Labs" is inaccurate and perplexing.

Plaintiffs' Interrogatory Responses: Much of Plaintiffs' case rests on their assertion that seven ranges of third-party IP addresses were secretly used by Meta. Compl. ¶¶ 97–100. Plaintiffs' only stated basis for that attribution is an unexplained analysis in which they purport to have connected Meta these third-party "IP addresses by looking for certain correlations to data patterns that matched [alleged] infringement patterns seen on Meta's corporate IP Addresses." *Id.* ¶ 94. Meta's Interrogatory No. 1 asks Plaintiffs to describe that process: which of their tools they

used, how they identified the IP addresses and files listed in Exhibits B and C, and whether those exhibits reflect all activity they detected or only the subset they elected to include. Plaintiffs have refused to provide any substantive response, standing on work-product and privilege objections that the law does not support where a party places its own methodology at issue by pleading it. Until Plaintiffs answer, Meta cannot demonstrate that Plaintiffs have identified only an unremarkable assortment of unrelated third-party torrenting activity not associated with Meta. Meta memorialized these deficiencies in an August 3, 2026 letter and anticipates further meet and confer on these issues.

Plaintiffs' Production: Plaintiffs repeatedly emphasize the volume of their production. But volume is not the measure of adequacy. As best as Meta can tell, a substantial portion of that production consists of numerous, duplicative copies of Plaintiffs' own video files, copyright registrations, and .torrent files. What remains absent, despite repeated requests, is evidence uniquely in Plaintiffs' possession bearing on the adequacy of its allegations: specifically, how Plaintiffs analyzed publicly available torrent data to identify IP addresses they attribute to Meta and arrive at the claims in their Complaint. Meta has requested this information and will address any deficiencies through the meet-and-confer process. Plaintiffs also again reference "third-party" discovery, but despite repeated requests by Meta, Plaintiffs have not shed any light as to what that third-party discovery might be, nor provided any documents received to Meta.

Conclusion: In sum, no discovery conference is necessary at this time. Plaintiffs' own submission confirms that any issues "may" require intervention in the future. As made clear above, Meta is not refusing to participate in discovery; it is engaging in good-faith efforts to respond to broad requests and to meet and confer on outstanding issues, despite Plaintiffs' repeated failure to comply with the parties' agreements on discovery deadlines. Meta remains committed to proceeding cooperatively and efficiently, and will continue to work with Plaintiffs to resolve disputes without burdening the Court and to timely complete fact discovery no later than the March 4, 2027 deadline. Meta disagrees with the rhetoric and mischaracterizations in Plaintiffs' portion of this statement and reserves all rights accordingly.

**2. MOTIONS**

(1) Prior and Pending Motions: On October 27, 2025, Meta filed a Motion to Dismiss Plaintiffs' claims for direct, vicarious, and contributory infringement, (ECF No. 33), which the Court denied. (ECF No. 61). More recently, the Court quashed a subpoena Plaintiffs served on Boies Schiller Flexner, LLP for material produced in the *Kadrey* litigation, holding the subpoena was premature and duplicative of Plaintiffs' requests for production, and ordering the Parties to confer on Meta's production of materials. (ECF No. 74). To date, Plaintiffs have narrowed their requests: eliminating any discovery related to the *Kadrey* plaintiffs' copyrights, businesses, and depositions. The parties are continuing to meet and confer regarding the balance of Plaintiffs' requests for the *Kadrey* discovery record, and will bring any dispute to the Magistrate Judge in accordance with its procedures should a dispute arise that cannot be resolved through meet and confer.

(2) Anticipated Motions:

*Plaintiffs' Position:* Plaintiffs anticipate Court intervention will likely necessary on the issues addressed above, including regarding failure to produce, failure to respond to interrogatories, frivolous objections, excessive AEO designations, and failure to designate appropriate custodians. Additionally, Plaintiffs are contemplating a Fed. R. Civ. P. 26(g) motion relating to some of Meta's objections and refusals to participate in discovery in good faith.

*Meta's Position:* Meta anticipates potential motion practice should Plaintiffs persist in their refusal to provide basic facts and documents to support their allegations in the Complaint and its exhibits in response to Meta's targeted document requests and interrogatories. Until Meta sees Plaintiffs' promised but untimely amended responses, Meta has no ability to assess the nature and scope of the issues that may require Court intervention. Meta will continue to meet and confer with Plaintiffs in good faith and reserves all rights should motion practice prove necessary.

DATED: August 17, 2026

Respectfully submitted,

By: */s/ Christian W. Waugh*

Christian W. Waugh (FL SBN 71093)
WAUGH PLLC
201 E. Pine St., Ste. 315
Orlando, FL 32901
*cwaugh@waugh.legal*
Tel: (321) 800-6008

Trey D. Brown (SBN 314469)
Strike 3 Holdings, LLC
11271 Ventura Blvd., Ste. 717
Studio City, CA 91604
*trey@strike3holdings.com*
Tel: (323) 347-4721

Jeremy J. Thompson (MN SBN 402173)
Law Office of Jeremy J. Thompson PLLC
5200 Wilson Rd., Ste. 150
Edina, MN 55424
*jeremy@jthompson.law*
Tel: (952) 952-1883

Lincoln D. Bandlow, Esq. (CA #170449)
Law Offices of Lincoln Bandlow, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9680
Email: Lincoln@BandlowLaw.com

Brian S. Ginter (SBN 265786)
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071
E-mail: bginter@bwslaw.com
Tel: (213) 236-0600

*Attorneys for Plaintiffs,*
STRIKE 3 HOLDINGS, LLC and
COUNTERLIFE MEDIA, LLC

By: */s/ Angela L. Dunning*

Angela L. Dunning (212047)
Samuel Blankenship (339905)
Kimberly Bittinger (359907)
CLEARY GOTTLIEB STEEN
& HAMILTON LLP
151 University Ave.

Palo Alto, CA 94301
Tel: (650) 815-4100
adunning@cgsh.com
sblankenship@cgsh.com
kbittinger@cgsh.com

Thomas Yeh (287118)
CLEARY GOTTLIEB STEEN
& HAMILTON LLP
650 California St., Suite 2400
San Francisco, CA 94108
Tel: (415) 796-4400
tyeh@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*