[Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company, and COUNTERLIFE MEDIA, LLC, a Delaware limited liability company,

Plaintiffs,

vs.

META PLATFORMS, INC., a Delaware corporation,

Defendant.

Case Number: 5:25-cv-06213-EKL

**PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED (CIV. L.R. 3-12, 7-11)**

Judge Eumi K. Lee

[N.D. Cal. Civil L.R. 3-12 & 7-11]

Pursuant to Civil Local Rules 3-12(b) and 7-11, Plaintiffs Strike 3 Holdings, LLC ("Strike 3") and Counterlife Media, LLC ("Counterlife") (collectively "Plaintiffs") respectfully request that this Court relate the action, *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 162.192.7.34*, 26-2578-VKD (N.D. Cal.), ("Strike 3 John Doe Case"), to the earliest filed and lowest numbered action before this Court, *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, No. 25-6213-EKL-SVK ("Strike 3 v. Meta").

## I. INTRODUCTION

On March 24, 2026, Strike 3 filed the *Strike 3 John Doe* complaint against an individual known only by his IP address ("John Doe"[1]) who Strike 3 detected infringed (and continues to do so) dozens of its motion pictures over the course of several months. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 162.192.7.34*, 26-2578-VKD (N.D. Cal.) (ECF No. 1). Because Strike 3 only knew the subscriber's IP address and not his actual identity, Strike 3 filed an *Ex Parte Application for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference* which Judge DeMarchi granted on April 15, 2026. (ECF No. 9). Strike 3 then promptly served a subpoena on the John Doe's Internet service provider, AT&T, to obtain his

[1] Judge DeMarchi entered a protective order in the *Strike 3 John Doe Case* which prohibits Strike 3 from "publicly" identifying the subscriber without leave of court. (ECF No. 9). Because of this, Strike 3 will refer to the subscriber as "John Doe".

identity and AT&T responded to the subpoena. Exhibit A, Kennedy Decl., at ¶ 3.

After conducting its investigation, Strike 3 learned that the defendant is an executive with Meta Platforms, Inc., ("Meta") the defendant in this case, in Meta's Reality Labs division. *Id*. at ¶ 4. Specifically, the John Doe Subscriber is [redacted] who is the [redacted] for Reality Labs. *Id*. at ¶ 5. His LinkedIn profile shows he has been employed by Facebook / Meta for over a decade. *Id*. at ¶ 6. Most notably, although the infringement emanated from John Doe's residential IP address, his infringement began the very same day that Strike 3 first notified Meta of the infringement happening on their corporate IP Addresses. *Id*. at ¶ 7. Indeed, on March 20, 2025, Strike 3's General Counsel emailed Meta for the first time to notify Meta of the infringement of Strike 3's motion pictures through Meta's corporate IP addresses. Strike 3 included several of Meta's outside copyright litigation counsel as well as in-house counsel on the email and provided forensic evidence of the infringement. *Id*. at ¶ 8. Just hours later, Strike 3 first recorded BitTorrent infringement on John Doe's residential IP Address. *Id*. at ¶ 9. This may suggest that Meta desired to shift infringing activity to this hidden residential IP Address in order to prevent further detection. Because of this, and as set forth in more detail below, Plaintiffs believe the cases should be related.

## II. ARGUMENT

Civil Local Rule 3-12(b) requires that "[w]henever a party knows . . . that an action, filed in . . .this district is (or the party believes that the action may be) related to an action which is . . . pending in this District . . . the party must promptly file in the lowest-numbered case an Administrative Motion to Consider Whether Cases Should be Related." An action "is related to another when: (1) [t]he actions concern substantially the same parties, property, transaction, or event; and (2) [i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civ. L.R. 3-12(a). Both elements are met here.

Strike 3 has not yet filed an amended complaint against John Doe and Meta in the *John Doe Subscriber Case* because Local Rule 3-12(b) requires that when a party "knows" or "believes

that the action may be" related it must *promptly* file a motion to relate the cases. Here, the cases are likely related because the actions concern the same parties: Strike 3, Counterlife,[2] and Meta. And while the infringement was recorded through the John Doe's residential IP address, the infringement appears to be for work purposes and not for personal use.

First, the timing alone suggests that John Doe may have infringed at home as a result of Strike 3's email. Second, the infringement correlates to the same infringement at issue in this action.[3] Just as it did here, Strike 3 also logged BitTorrent network activity emanating from the John Doe's IP address involving files other than Plaintiffs' which Strike 3 refers to as its "Additional Evidence." Exhibit A, Kennedy Decl., at ¶ 11. Strike 3's Additional Evidence shows that the John Doe's IP address was used to torrent nearly 20,000 files, many of which relate to virtual reality adult film content (including specific content designed for Meta's Oculus/Quest headset, which is developed by Meta's Reality Labs).[4] *Id*. at ¶ 12. As the [redacted], John Doe's infringing transactions are consistent with work that would ensure that Meta's Oculus/Quest is compatible with adult film content, surely a lucrative business for Meta.[5] Therefore, it is reasonable (and plausible) to infer that the infringement was done on behalf of Meta, and not on an individual basis. *RCA/Ariola Intern., Inc. v. Thomas & Grayston Co*., 845 F.2d 773, 779–81 (8th Cir. 1988) (explaining "the most obvious basis for holding the retailers liable" was the action taken by "the retailers' employees").

And, as the [redacted] for Meta's Reality Labs, it seems *implausible* he would have the time (and varied hobbies and interests) to download and consume tens of

[2] Although Counterlife was not an original Plaintiff to the *Strike 3 John Doe Case*, Strike 3 has recorded infringement of Counterlife's motion pictures by John Doe. Kennedy Decl., at ¶ 10.

[3] Plaintiffs are in the process of conducting a similar analysis to Ex B/C of Plaintiffs' Amended Complaint and have identified dozens of correlations emanating from the John Doe's residential infringement to Meta's corporate IPs, the hidden IPs, and the other Reality Labs infringer. Exhibit A, Kennedy Decl., at ¶ 16.

[4] *See, e.g., A Decade After Buying Oculus VR, Meta's Reality Labs' Losses are Spiraling out of Control, with No End in Sight* PC GAMER*,* (Aug. 5, 2024*)* https://finance.yahoo.com/news/decade-buying-oculus-vr-metas-151707364.

[5] *See*, *e.g.*, *You Can Watch Augmented Reality Porn on a Meta Quest 3, LIFE HACKER,* (Jul. 29, 2024) https://lifehacker.com/tech/how-to-watch-augmented-reality-porn-on-meta-quest-3.

thousands of files for personal use. For example, on Tuesday, August 25, 2026, Strike 3 recorded John Doe infringing over 150 files, several of which included "Mega Packs," spanning languages such as English, Japanese, Korean, Mandarin, Russian and French, and including television shows, movies, software, books, and music (although the overwhelming majority consisted of adult content). Kennedy Decl., at ¶ 13. The software infringements were so diverse they ranged from video editing tools to automotive repair data to open-source operating systems to sniper video games. *Id*. at ¶ 14. The infringements also included nearly a dozen of Strike 3's motion pictures sandwiched between files of what appears to be AI generated pornography and VR adult films. *Id*. at ¶ 15. In short, this is a lot for one person to torrent on an average day, particularly one who has a demanding job. But the infringement makes sense for diverse AI training data, research, and developmental projects, some of which appear to be designed to compete with Plaintiffs' businesses. "To be able to generate a wide range of text—in different languages or styles, or regarding different subject matter—an [AI's] training dataset must be large and diverse." *Kadrey v. Meta Platforms, Inc*., 788 F. Supp. 3d 1026, 1039 (N.D. Cal. 2025).

The actions should also be related because they concern the same property, transactions, and events. Indeed, John Doe is not the first person from Meta's Reality Labs associated with Plaintiffs' case against Meta. The other residential infringer currently identified in Plaintiffs' Amended Complaint also worked for Meta's Reality Labs. And Meta identified Arrigo Benedetti, a former "computer vision" contractor who worked for Reality Labs in the *Kadrey* lawsuit, as having downloaded a file from Plaintiffs' Exhibits B/C (*Kadrey*, ECF No. 758). "Although the individual transactions addressed by each case are not identical, they are underlined by the same operative facts." *Pepper v. Apple Inc*., No. 11-6714, 2019 WL 4783951, at *1 (N.D. Cal. Aug. 22, 2019). And, as a corporate executive for Meta, John Doe may be held jointly and severally liable for the infringement. *Carson v. Verismart Software,* No. 11-3766, 2012 WL 1038662, at *5 (N.D. Cal. Mar. 27, 2012) ("[C]orporate officers, shareholders, and employees may be held personally liable for the corporation's copyright infringements when they are a 'moving, active

conscious force behind the corporation's infringement,' regardless as to whether they are aware that their acts will result in infringement").

Because the facts of the cases are intertwined, there is a serious risk of unduly burdensome duplication of labor and expense which could also lead to conflicting results. Many depositions would have to be repeated, as well as duplicative discovery production and motion work. For example, Plaintiffs anticipate moving to compel Meta to designate a custodian from Reality Labs and to produce documents related to torrenting. These motions would likely have to be filed in each case which would unnecessarily consume judicial resources, particularly in light of separate protective orders, and could lead to conflicting rulings relating to the merits as well as to what information should be sealed. "The purpose of the related-case rule is to allow cases to be heard in a way that most efficiently uses judicial resources." *Univ. of California v. Eli Lilly & Co.*, No. 90-373, 1991 WL 332056, at *10 (N.D. Cal. Nov. 4, 1991).

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court relate the action *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 162.192.7.34*, 26-2578-VKD (N.D. Cal.) to *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, No. 25-6213-EKL-SVK.

DATED: August 28, 2026

Respectfully submitted,

By: */s/ Christian W. Waugh*

Christian W. Waugh (FL SBN 71093)
WAUGH PLLC
201 E. Pine St., Ste. 315
Orlando, FL 32801
*cwaugh@waugh.legal*
Tel: (321) 800-6008

Trey D. Brown (SBN 314469)
STRIKE 3 HOLDINGS, LLC
11271 Ventura Blvd., Ste. 717
Studio City, CA 91604
*trey@strike3holdings.com*
Tel: (323) 347-4721

Jeremy J. Thompson (MN SBN 402173)
LAW OFFICE OF JEREMY J. THOMPSON PLLC
5200 Wilson Rd., Ste. 150
Edina, MN 55424
*jeremy@jthompson.law*
Tel: (952) 952-1883

Lincoln D. Bandlow, Esq. (SBN 170449)
LAW OFFICES OF LINCOLN BANDLOW, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9680
Email: Lincoln@BandlowLaw.com

Brian S. Ginter (SBN 265786)
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071
E-mail: bginter@bwslaw.com
Tel: (213) 236-0600

*Attorneys for Plaintiffs,*
STRIKE 3 HOLDINGS, LLC and
COUNTERLIFE MEDIA, LLC