[Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company, and COUNTERLIFE MEDIA, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>Defendant. | Case Number: 5:25-cv-06213-EKL<br><br>**SECOND JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge Eumi K. Lee |

Pursuant to this Court's Standing Order for Civil Cases and the Court's August 18 Order (ECF No. 77), counsel for Plaintiffs Strike 3 Holdings, LLC, and Counterlife Media, LLC (collectively, "Plaintiffs"), and counsel for Defendant Meta Platforms, Inc., ("Meta"), hereby submit this Second Joint Case Management Statement.

## I. STATUS OF DISCOVERY

***Plaintiffs' Position:***

Plaintiffs' Offensive Discovery. Since the last status report, Meta has not produced a single document outside of documents it has produced in the *Kadrey v. Meta* lawsuit. To date, the Parties have conferred thirteen (13) times, including an additional seven times since the Parties' last status report. The Parties have now conferred on: May 26, June 2, June 5, June 23, July 14, July 29, August 5, August 19, August 28, September 4, September 10, October 2, and October 19. After over six-months, Plaintiffs still barely have enough evidence to prove Meta has an Internet connection. Plaintiffs anticipate that a fact discovery extension may be necessary because Meta has still not responded to the most basic requests. Plaintiffs also anticipate needing future Court intervention, as discussed below. Plaintiffs respectfully request the Court continue to set status reports, as it encourages Meta to produce, at the very least, some information.

Plaintiffs have served Meta with three motions to compel. Each time, Meta insists on

conferring, again, and then moots each motion by stating it will produce responsive documents without stating when. Just this morning, Meta changed its position regarding RFPs that relate to Meta's corporate BitTorrent use. Plaintiffs withdrew the Motion to Compel they served on Meta based on Meta's prior representation at the parties' conferral. Plaintiffs now have to confer, reedit, and re-serve a new Motion to Compel, and repeat the cycle over again. In short, Meta seeks to avoid its discovery obligations, while preventing Plaintiffs from seeking Court intervention, running down the discovery clock.[1] Because Meta had initially refused to search for any of Plaintiffs' RFPs, and insists Plaintiffs confer on them one by one, Plaintiffs have tried to focus their discovery on the most important information necessary to move their case forward. Meta still refuses to search for materials responsive to 61 of Plaintiffs' RFPs. Plaintiffs have also recently propounded RFPs on topics including: (1) human mesh recovery (computer vision techniques used by virtual reality systems); (2) Meta's network security policies (since Meta appears to be the only corporation unable to block BitTorrent use); (3) Meta's policies on allowing AI models to engage and produce adult content (since it has apparently departed from the prohibition Meta argued was the basis for dismissing Plaintiffs' Complaint). Indeed, Meta's latest AI platform "is an app for people 18 and over that allows them to engage in adult conversations," and, according to a spokesperson, "doesn't block legal adult behavior" like generating adult content. *Contra* ECF No. 34-5, at §1.B. (Meta's AI Terms of Service). See Reece Rogers, *I Got My Muse AI Agent to Sext Me—and Meta Says That's Totally Fine*, WIRED (Oct. 12, 2026) https://www.wired.com/story/i-got-my-muse-ai-agent-to-sext-me-and-meta-says-thats-totally-fine/.

<u>Meta's Corporate IP addresses</u>: Meta has not produced information identifying a single employee or department who accessed or was assigned the infringing IP addresses in Plaintiffs' Amended Complaint, Ex. A. Discovery is more than halfway over, and this subject has been the bulk of Plaintiffs' conferrals and two (drafted and served) Motions to Compel. Meta has tried to limit its responses in ways that, by Plaintiffs' reading, would not produce any discernible

[1] Meta's counsel has utilized this tactic in other cases as well. *See e.g. Andersen, et al. v. Stability, et al.*, Case No. 3:23-cv-00201-WHO (LJC), ECF Nos. 738, 739, 741.

information. Meta now claims it will produce documents but is unsure when.

Individuals Possessing Torrented Copies of Plaintiffs' Motion Pictures: On July 17, Meta served Plaintiffs with Supplemental Responses to Plaintiffs' Interrogatories that included the names of five Meta employees who "interacted" with torrented versions of Plaintiffs' Motion Pictures identified in its Amended Complaint. On August 13, Plaintiffs referenced one of the employees in a meet and confer letter and Meta emailed Plaintiffs' requesting a clawback of "the names of individual Meta employees." Meta claims the July 17 Supplemental Responses were a "draft" subject to "attorney client privilege" and that it intended to redact the employees' names it disclosed because identifying the employees implicated "the individuals' privacy, employment, and other legal rights . . . ." Pursuant to the Parties' Protective Order, ECF No. 64, Meta instructed Plaintiffs to destroy all copies of the July 17 Supplemental Response, confirm in writing, and refrain from using the inadvertently disclosed information in any capacity going forward. Plaintiffs reluctantly did so under fear of sanctions, despite firmly arguing that the employees' identities are relevant. Indeed, Meta claims that it "has not identified any documentation of the torrent downloads in Plaintiffs' complaint" but this is false. The individuals above all "interacted" with torrented downloads directly from Plaintiffs' Amended Complaint.

Likely because of this status report deadline, Meta produced the names to Plaintiffs just last night. However, Plaintiffs continue to dispute Meta's designation of the employees as "Attorney's Eyes Only" limiting Plaintiffs ability to investigate the individuals. For the first time, Meta also informed Plaintiffs that it had discovered additional employees who have also "interacted" with Plaintiffs' motion pictures and torrent files relating to Plaintiffs' motion pictures. Meta has not produced the names of the additional employees, nor any information surrounding the employees' torrenting.

*Kadrey v. Meta Documents*: Meta has produced 806 documents consisting of limited internal communications relating to the torrenting of library genesis from *Kadrey v. Meta*. Additionally, Meta has produced eight deposition transcripts and three discovery responses from *Kadrey v. Meta*. Plaintiffs have conferred with Meta multiple times and narrowed its requests, but

to date, this production represents only a tiny portion of the relevant discovery from *Kadrey v. Meta* that relates to torrenting. Strike 3 also responded to a subpoena by Entrepreneur Media in the *Kadrey* related case and provided data of Meta's former researcher [redacted] torrenting Library Genesis, as well as Strike 3's motion pictures, among others.

Custodians: Plaintiffs continue to confer with Meta on Meta's designated custodians, including custodians related to Reality Labs. Although Meta reassures Plaintiffs that its production is delayed because of the volume of ESI to be searched, Meta has only designated three ESI custodians. This differs significantly from parallel litigation involving Meta in which it designated at least 15 custodians. See *Kadrey v. Meta Platforms, Inc.*, No. 23-3417, 2025 WL 2180673, at *2 (N.D. Cal. Aug. 1, 2025). With respect to Reality Labs–what Meta called in the prior Statement "a red herring," ECF No. 76, at 8, it has only designated the residential infringer identified in Plaintiffs' Amended Complaint, ECF No. 70, at ¶¶103–7, who was a "Contingent Worker at Meta from October 2022 to October 2024," ECF No. 73, at ¶105, and ceased working for the company in May 2026. *See id.* at ¶106. Moreover, the proffered scope of the designation is confined solely to communications from "the relevant period identified in the Amended Complaint, including *his involvement or non-involvement* in sourcing video data for Meta . . . ." Of the two other custodians designated by Meta, only one continues to work there. One custodian is from MovieGen, and another is a software engineer with communications relevant to Meta's AI Data Catalog. Plaintiffs are not sure the scope of relevant material either custodian possesses since Meta has not produced anything related to them.

Plaintiffs' Discovery Production to Meta: Plaintiffs have produced hundreds of thousands of documents, each one being responsive to Meta's RFPs. Plaintiffs continue to do so in good faith. Plaintiffs have responded to Meta's 79 RFPs (and are in the process of responding to an additional, recently served, 23 RFPs). Plaintiffs have also supplemented their interrogatory responses to Meta to thoroughly explain how they correlated Meta's infringement to the residential infringement and hidden data center infringement, as well as providing Meta *all data* associated with all of the IPs in the Amended Complaint, enabling Meta to re-create Plaintiffs'

Exhibits. Despite this, Meta insists Plaintiffs' produce *all* documents and communications associated with Plaintiffs' drafting of its Complaint and its entire litigation, which goes to the heart of attorney-client privilege.

Plaintiffs are in the process of conducting custodian searches as well as completing production relating to its corporate structure, internal contracts, its AI policies, documents associated with various other Meta employees its caught infringing in the course of its anti-piracy litigation, additional documents related to identifying the hidden data centers, internal subscriber data and revenue, and documents showing the first date of production for each of Plaintiffs' Motion Pictures. Plaintiffs anticipate numerous disputes regarding Meta's RFPs that demand attorney-client privileged communications, settlement agreements with third-parties that contain confidential information protected by court orders, confidential subpoena responses from third-party litigation, and numerous attorney-client privileged information relating to Plaintiffs' communications with its counsel from its copyright litigation. Additionally, Meta is demanding Plaintiffs produce all communications where Plaintiffs reference Meta or this lawsuit, despite absolutely refusing to produce any communications about this lawsuit itself. Other requests Meta is demanding Plaintiffs produce contain so many documents that Plaintiffs may never be able to complete production (such as all communications and documents associated with Plaintiffs' enforcement methods of its intellectual property and all documents that reference any of Plaintiffs' competitors) despite having limited relevance to the infringement at issue in this case.

***Meta's Position:***

Pursuant to the Court's August 18, 2026 order, ECF No. 77, Meta has continued to confer with Plaintiffs in good faith and the parties have made progress on discovery. No intervention by the Court is required at this time, nor does Plaintiffs' portion suggest otherwise. If any genuine disputes emerge from ongoing discussions, they will be raised with the Magistrate Judge through the established procedures. Meta anticipates that all fact discovery, including depositions, will be complete on or before the March 4, 2026 cutoff set by the Court. ECF No. 52.[2]

[2] Plaintiffs' assertion that Meta is "running down the discovery clock" is false, and the case they cite in support of this assertion (in n.1) does not involve Meta.

**(1) <u>Meta's Document Productions and Discovery Responses</u>**

***Kadrey* Materials:** Since the last status report, Meta has made two additional document productions consisting of discovery materials from the *Kadrey v. Meta* lawsuit, as requested by Plaintiffs. These productions followed extensive meet and confers in which the parties worked to narrow Plaintiffs' overbroad request for cloned discovery from *Kadrey*, as required by Magistrate Judge van Keulen's order, ECF No. 74. Meta agreed to run search terms over the entirety of the *Kadrey* document production, produce written discovery and depositions from *Kadrey* related to alleged torrenting (among other negotiated topics), and produce the entire custodial production for certain *Kadrey* custodians. To date, Meta has produced approximately 3,000 pages of such material from *Kadrey*. Meta anticipates making a further production this week or early next, and will continue rolling productions until complete. This process is not automatic, since the *Kadrey* materials have to be processed, searched and reviewed. Additionally, Meta must take care to ensure that its productions are consistent with any privilege and confidentiality designations from *Kadrey* and that any third party notice obligations are satisfied. Further, discovery and privilege review is ongoing in *Kadrey* and the related cases pending before Judge Chhabria in which discovery is being shared, complicating the review in this case.[3]

**Custodial Productions:** Meta is reviewing custodial data for the three custodians it disclosed to Plaintiffs on August 7. Meta expects to begin rolling productions of this ESI in the next few weeks. Plaintiffs have likewise only disclosed three custodians and have not asked to meet and confer on Meta's proposed custodians, though Meta is willing to meet and confer.

**Other Document Discovery:** Meta disputes that any of the torrenting alleged in Plaintiffs' Complaint was performed by Meta or at its direction.[4] Most of the alleged downloads were performed by unknown individuals using third party IP addresses that Meta has no visibility

[3] Plaintiffs reference the subpoena to which they responded in the *Kadrey*-related *Entrepreneur Media* case, but the produced documents pertained to an IP address not at issue in this case, and Meta is unaware of any basis for Plaintiffs to attribute that torrenting to a specific individual.

[4] Those torrents are separate from Meta's alleged torrent downloading of large publicly available text datasets for AI training and development, found to be fair use in *Kadrey* and not at issue here, though, as discussed above, Meta is providing those documents to Plaintiffs in the interest of transparency.

or control over. As to the downloads allegedly performed on Meta IP addresses, there is no centralized repository from which information about the alleged torrenting activity can be readily obtained. Accordingly, Meta has been conducting a painstaking investigation, including company-wide searches and many dozens of interviews, in an effort to determine whether documents responsive to Plaintiffs' requests exist and, if so, where they may be located. To date, Meta has not found any evidence supporting Plaintiffs' claims that the alleged torrent downloads were performed with Meta's knowledge and authorization or for its benefit. Meta has produced responsive documents it has been able to identify based on this investigation to date, and will continue searching for non-privileged, responsive documents it can find relating to, among other things, Plaintiffs, their works, the alleged torrents, or assignment and use of the IP addresses at issue. As noted in Plaintiffs' statement, many of the document disputes Plaintiffs identified have been resolved through meet and confer, and none are ripe for Court intervention.

**Plaintiffs' New Discovery Requests:** Meta has not had a chance to review or respond to Plaintiffs' newest document requests, which were propounded only today. However, Meta disputes Plaintiffs' characterizations of the facts and circumstances surrounding them.

**Interrogatory Responses:** Plaintiffs point to a now-resolved dispute over Meta's response to Plaintiffs' Interrogatory No. 2, which asked Meta to identify all persons who have knowledge of the downloading, uploading, copying, distribution, possession, or use of Plaintiffs' works. Meta's written response indicated that it had not identified any evidence of the torrents alleged in the Complaint, but was nevertheless disclosing certain instances it had discovered in which individuals appear to have interacted with (e.g., viewed or opened) Plaintiffs' videos.[5] Meta's written response stated explicitly that it would withhold the individuals' names for privacy, but Meta's counsel inadvertently served a draft version of the responses in which the names were not redacted, and clawed it back as work product under Section 13 of the Protective Order. In conversations following the clawback (which Plaintiffs never formally challenged), Meta explained to Plaintiffs that it had redacted these individuals' names due to the lack of

[5] Plaintiffs mischaracterize Meta's response, which stated that it was disclosing interactions even absent evidence that the videos had been torrented by the disclosed individuals or otherwise.

evidence that these individuals had performed the torrents alleged in Plaintiffs' Complaint and to ensure compliance under U.S. and international privacy laws, along with any applicable notice requirements for the affected employees. On October 19, 2026, Meta agreed to supplement its response to identify the name, title, and department of the individuals referenced in its supplemental response, and served that supplemental response on October 20, as requested by Plaintiffs. Meta has continued to investigate Plaintiffs' claims and informed Plaintiffs that it plans to further supplement this interrogatory. None of the activity identified in Meta's response to Interrogatory No. 2 was authorized by Meta or related in any way to Meta's AI training.

**Discovery Motions:** To date, there has been only one joint letter brief filed with the Court—Meta's motion to quash the subpoena Plaintiffs served on non-party law firm Boies Schiller (ECF No. 72), which was granted by the Court on July 17, 2026 (ECF No. 74). Although Plaintiffs note that they have sent Meta several other proposed joint letter briefs, in most cases, Plaintiffs have done so before the parties have met and conferred on the specific issues and confirmed impasse, as required by Section 7 of Magistrate Judge van Keulen's Standing Order. By way of example, the parties met and conferred regarding Plaintiffs' request for documents regarding assignment of Meta's corporate IP addresses on September 4, 2026, and Meta served supplemental responses on September 9, 2026, conforming to the parties' discussion. Before conferring on those supplemental responses or identifying anything inadequate about them, Plaintiffs unilaterally sent Meta their portion of a proposed joint letter brief on September 17, raising new concerns about language that had never changed and as to which the parties had not conferred. Meta asked to discuss Plaintiffs' newly stated concern, as required by the Court's rules, and after that discussion, the parties were able to resolve the dispute without motion practice. Since that conferral, Meta has made progress in its search for documentation of how its internal IP addresses are assigned and used and Meta expects to produce those documents to Plaintiffs soon. Meta has already provided documents confirming that, contrary to Plaintiffs' allegations, the six IP ranges (A-G) alleged in the Complaint do not correspond to the IP addresses for the servers used in *Kadrey* (*cf.* Am. Compl. ¶ 98), and has explained in a verified interrogatory

response that most of the Meta corporate IP addresses correspond to an internet service Meta acquired many years ago, offered to the public, and deprecated in 2019. Similarly, what Plaintiffs characterize as a change in position regarding RFPs that relate to Meta's corporate BitTorrent use was merely Meta's written recitation of its position from the parties' meet and confer during which it agreed to produce responsive documents. Meta is unsure what concerns Plaintiffs now claim to have with the substance of Meta's response, as they have not identified them.

**(2) Plaintiffs' Deficient Discovery Responses**

Plaintiffs' productions to date, though voluminous, leave most of Meta's discovery requests unaddressed. On July 17, 2026, Plaintiffs produced copyright registrations, deposit copies of their adult videos, and over 69,000 ".torrent" files of unknown provenance or relevance. On July 29, Plaintiffs produced approximately 40 terabytes, consisting overwhelmingly of additional copies of their adult videos. On August 17, Plaintiffs produced complaints from lawsuits ascribing the same torrents asserted here to other parties, along with spreadsheets containing thousands of purported torrenting instances, again of unknown provenance or relevance. On September 17, Plaintiffs produced just nine documents—one complaint, several emails from Plaintiffs' counsel, and a 474,000-row spreadsheet. Plaintiffs have produced no custodial ESI to date. These productions leave most of Meta's 79 document requests unanswered. Plaintiffs have improperly limited their production, or refused to produce at all, in response to 47 requests. Even where Plaintiffs agreed to produce, many requests remain unfulfilled. These unanswered, limited, or rejected requests go to critical issues—including the creation of the Complaint exhibits, documents regarding the basis for attributing the alleged torrents to Meta, and documents regarding Plaintiffs' purported monetary harm. Plaintiffs also appear to be improperly withholding material on privilege grounds, including basic facts and documents showing the methodology underlying Plaintiffs' creation of Exhibits B and C to the Amended Complaint, which provide virtually the entire foundation for Plaintiffs' (false) assertion that Meta directed the torrents at issue. Plaintiffs also have not served Meta with a privilege log, making it difficult for Meta to determine what is being withheld and on what basis.

Plaintiffs' complaint that Meta's discovery is overburdensome, and that Meta refuses to produce documents it has itself requested of Plaintiffs, is inaccurate. For example, contrary to Plaintiffs' suggestion, Meta is searching for and will produce any documents mentioning Plaintiffs and their works that can be found following a reasonable search—Plaintiffs need to do the same for references to Meta and this lawsuit. The parties have conferred about many of these issues, and Meta most recently documented the remaining deficiencies in letters dated October 14 and 16, 2026. The parties have scheduled a meet and confer for October 22, 2026, and any disputes that are not resolved will be raised with the Magistrate Judge through the established procedures. Plaintiffs' interrogatory responses are also seriously deficient, but Meta is awaiting further documents before finalizing that meet and confer and bringing any disputes to the Court.

## II. MOTIONS

***Plaintiffs' Position*:** Plaintiffs intend to promptly file a renewed Motion to Relate Cases. On October 15, Judge DeMarchi granted Plaintiff, Strike 3 Holdings, LLC, limited leave to disclose the identity of the residential infringer to the Court to determine whether the cases should be related as well as to Meta's counsel of record. Strike 3 promptly provided Meta's counsel of record with the name and address of the residential infringer. On October 19, the Parties met and conferred, and Meta indicated it would oppose Plaintiffs' request. Meta claims, without providing any evidence, that John Doe did not work for it during the time of infringement. But Plaintiffs' have traced John Doe's infringement to several years before his alleged departure.

***Meta's Position:*** On August 28, 2026, Plaintiffs moved to relate *Strike 3 Holdings v. John Doe*, 26-cv-2578-VKD (N.D. Cal.), alleging John Doe was a Meta employee acting on Meta's behalf. The Court denied the motion without prejudice as procedurally improper, directing Plaintiffs to first obtain leave from Judge DeMarchi to disclose John Doe's identity. Following Judge DeMarchi's October 15, 2026 Order granting limited disclosure, Plaintiffs disclosed the identity to Meta, and the parties met and conferred on October 19. Meta has informed Plaintiffs it will oppose any motion to relate, as John Doe had already left Meta's employ at the time of the alleged torrents. No earlier torrenting is even alleged.

DATED: October 21, 2026

Respectfully submitted,

By: /s/ Christian W. Waugh

Christian W. Waugh (FL SBN 71093)
WAUGH PLLC
201 E. Pine St., Ste. 315
Orlando, FL 32901
*cwaugh@waugh.legal*
Tel: (321) 800-6008

Trey D. Brown (SBN 314469)
Strike 3 Holdings, LLC
11271 Ventura Blvd., Ste. 717
Studio City, CA 91604
*trey@strike3holdings.com*
Tel: (323) 347-4721

Jeremy J. Thompson (MN SBN 402173)
Law Office of Jeremy J. Thompson PLLC
5200 Wilson Rd., Ste. 150
Edina, MN 55424
*jeremy@jthompson.law*
Tel: (952) 952-1883

Lincoln D. Bandlow, Esq. (CA #170449)
Law Offices of Lincoln Bandlow, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9680
Email: Lincoln@BandlowLaw.com

Brian S. Ginter (SBN 265786)
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071
E-mail: bginter@bwslaw.com
Tel: (213) 236-0600

*Attorneys for Plaintiffs,*
STRIKE 3 HOLDINGS, LLC and
COUNTERLIFE MEDIA, LLC

Dated: October 21, 2026

By: /s/ Angela L. Dunning

Angela L. Dunning
CLEARY GOTTLIEB STEEN
& HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
SAMUEL BLANKENSHIP (339905)
sblankenship@cgsh.com
KIMBERLY BITTINGER (359907)
kbittinger@cgsh.com
151 University Avenue
Palo Alto, CA 94301
Telephone: +1 (650) 815-4100

CLEARY GOTTLIEB STEEN
& HAMILTON LLP
THOMAS W. YEH (287118)
tyeh@cgsh.com
650 California St., Suite 2400
San Francisco, CA 94108
Telephone: +1 (415) 796-4400

Attorneys for Defendant
META PLATFORMS, INC.