[*Counsel on signature page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company, and COUNTERLIFE MEDIA, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:25-cv-06213-EKL-SVK<br><br>**DISCOVERY MATTER**<br><br>**JOINT STATEMENT OF DISCOVERY DISPUTE**<br><br>Judge: Hon. Eumi K. Lee<br><br>Magistrate Judge: Hon. Susan van Keulen |

Pursuant to L.R. 37-1 *et seq.* and Section 7(b) of Your Honor's Standing Order, Plaintiffs Strike 3 Holdings, LLC and Counterlife Media, LLC ("Plaintiffs"), and Defendant, Meta Platforms, Inc. ("Meta"), respectfully submit this Joint Statement of Discovery Dispute.

**Close of Fact Discovery:** March 4, 2027

**Jury Trial**: February 7, 2028

**Issue:** Whether Meta has a discovery obligation to search for and produce responsive materials and whether Meta's responses and conduct violate Rule 26(g).

**Plaintiffs' Position:** Meta should be compelled to, at a minimum, search for and produce unobjectionable material along with its already-promised discovery by a date certain. The Court should admonish Meta's discovery misconduct, bad faith conferrals, and dilatory tactics.

**Meta's Position:** Plaintiffs' motion to compel production as to an unspecified number of document requests is improper and should be denied for failure to meet and confer as required by the Court's Standing Order and failure to make (or even attempt to make) the required threshold showing of relevance for many requests, which are overbroad and/or duplicative of requests for documents ~~as to which~~that Meta has already agreed to search for, and is in the process of producing.

## PLAINTIFFS' POSITION

## I. INTRODUCTION AND RELEVANT BACKGROUND

Meta exploits its control of the evidence. Its dilatory "refuse first, (maybe) produce later" approach to discovery has forced no fewer than fifteen conferrals, countless emails, and still no production to nearly all of Plaintiffs' Requests for Production ("RFPs"). In fact, for months, Meta has refused to even search for responsive materials to 61 of the RFPs.[1] Even for the 32 RFPs it has agreed to search, Meta has only produced a small handful of documents with most requests still unanswered. Since Meta refuses to carry out its basic discovery obligations in good faith, Plaintiffs now seek an order compelling Meta to search for responsive material. Additionally, to ensure Meta does not frustrate this litigation further, Plaintiffs respectfully request the Court admonish Meta's discovery abuses.

Plaintiffs served their First Set of RFPs on March 27, 2026. Meta responded on April 27 with objection-only responses; it did not produce a single document. For 92 of the RFPs, it responded, "Meta will not search for or produce documents" and was only "willing to meet and confer" on 23 of those RFPs.[2] *See* Exhibit A. On May 24, Plaintiffs sent Meta a deficiency letter explaining why this blanket refusal to search was improper while offering various compromises and hardlines to the scope of the RFPs. Meta still would not search. Plaintiffs then held meet-and-confer sessions with Meta on May 26, June 2, and June 5.

After nearly three-months and no commitment to search for materials, on July 24, Plaintiffs sent Meta a joint statement of a discovery dispute, in part, to compel Meta to search for materials. Meta's counsel emailed on July 28, offering to confer. Plaintiffs accepted Meta's offer in good faith and conferred on July 29. That same day, Plaintiffs emailed Meta and agreed to table their joint motion based on Meta's commitment to amend its responses. On August 7, Meta supplemented a mere 28 of its responses and agreed that it "will conduct a reasonable search for and produce" materials to only some of the RFPs. It did not produce a single document in response.

Plaintiffs conferred again on August 19 and August 28. Making no progress, on September

---

[1] Plaintiffs do not seek to compel responses to all the RFPs in which Meta has refuses to search for materials since the parties have compromised on several of them.

[2] RFPs Nos. 4, 5, 17, 18, 25, 30–34, 44, 47–48, 52, 56, 61, 67, 69, 75, 83, 85–86, 102.

1, Plaintiffs served Meta with a second joint motion, in part, to compel Meta to search for responsive materials (and analyzing Meta's Rule 26(g) violations). Meta emailed Plaintiffs the following day, offering to confer again "to narrow or potentially resolve [the disputes] without court intervention[.]" The parties conferred on September 4, and Meta represented it would supplement its responses on September 9. As a result, Plaintiffs withdrew its motion.

But come that day, Meta merely supplemented its written responses, agreeing to search for just 4 more RFPs, *see* Ex. A, and, again, produced zero materials. Plaintiffs continued to confer and served additional joint motions on Meta regarding separate issues: materials related to Meta's IP address (on September 15), and on Meta's improper clawback of information from its answer to Plaintiffs' Interrogatory No. 2 (on September 23). For both motions, Meta did not provide its portion of the joint motion, but instead, represented it would do just enough to moot the relief.

After more emails and conferrals, Meta finally agreed to respond to RFP Nos. 4–6, 22, 49 (relating to Meta's IP addresses). But on October 30, Meta again just supplemented its responses a second time, *see* Ex. A, and produced approximately 2,300 documents mainly focused on RFP Nos. 60, 80, 81, and materials from other sets of discovery. It is not clear why Meta changed its position on these requests despite stating it would not search for materials responsive to them, and not others.

## II. ANALYSIS

### A. Meta Must Perform a Good Faith Search for Responsive Material

"The discovery system depends absolutely on good faith and common sense from counsel." *In re Convergent Techs. Sec. Litig.*,108 F.R.D. 328, 331 (N.D. Cal. 1985). Meta's refusal to even search for responsive materials flaunts the Federal Rules. *See* Fed. R. Civ. P. 26(g)(1)(B)(i). When responding, parties "must specify the part of the request objected to and produce documents responsive to the unobjectionable portion of the request." *Handloser v. HCL Am., Inc.*, No. 19-1242, 2020 WL 4923971, at *6 (N.D. Cal. Aug. 21, 2020) (citing Fed. R. Civ. P. 34(b)(2)(C)). Yet over seven-months later, Meta still refuses search for responsive material to most of the 102 RFPs.

Discovery contemplates "an affirmative duty to seek . . . information reasonably available to [Meta] and make an appropriate production of responsive documents." *London Wallace v. City of Fresno*, No. 19-1199, 2021 WL 916244, at *5 (E.D. Cal. Mar. 10, 2021) (citations omitted)

(quotations removed); *see Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009) ("The responding party has an obligation to conduct a reasonably inquiry into the factual basis of its responses[.]") (citing *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 554–56 (N.D. Cal. 1987)). It is "not reasonable to simply object to a request in its entirety and invite a conference of counsel. That's just not the way Rule 26 works, [or] Rule 34 works specifically." *See Handloser*, 2020 WL 4923971 at *6 (citation omitted).

Rather than advance discovery, Meta abuses the meet-and-confers process to thwart it. Conferrals are to be conducted "in good faith . . . in an effort to obtain [discovery] without court action." *See* Fed. R. Civ. P. 37(a)(1). This generally requires "the parties 'present to each other the merits of their respective positions with the same specificity with which they would brief the discovery dispute.'" *See Owen v. Hyundai Motor Am.*, 344 F.R.D. 531, 537 (E.D. Cal. 2023) (citations omitted). Indeed, the goal of the conferral process "is precisely so that the parties will share their positions and make a concerted, good faith effort at resolution." *See Staggs v. Panda Express, Inc.*, No. 24-10, 2024 WL 4509101, at *3 (M.D. Tenn. Oct. 16, 2024). Meta's inconsistent responses after multiple conferrals betray its bad faith.

For example, after conferring on the relevance of Meta's use of virtual private networks ("VPNs") on June 2, Meta agreed to search for materials from VPNs FreedomTech, ProtonVPN, and Kape. *See* RFP Nos. 40–42. Yet it continues to refuse to search for materials from another VPN, xTom, and Cogent, the company that traces to some of Meta's Off-Infra IPs, RFP Nos. 39 & 43, or other materials related to its VPN use. *See* RFP Nos. 18, 33–34, 77. Meta's goal is, thus, not to clarify the issues, but to force bad faith conferrals on *every single* request, stalling discovery to a crawl. *See also* (ECF No. 72-2) (refusing to search for responsive material to Plaintiffs second set of RFPs). Combined with its habit of altering its discovery position–just enough to moot Plaintiffs' sought relief–only after being served with a joint motion, Meta has weaponized this process to be as prolonged and wasteful as possible. *See Bird v. Wells Fargo Bank*, No. 16-1130, 2017 WL 3085804, at *5 (E.D. Cal. July 20, 2017).

"General refusals to respond to discovery requests in bulk will not be permitted." *See Bank of Am., N.A. v. Sellars*, No. 12-1655, 2014 WL 1356217, at *2 (W.D. Wash. Apr. 7, 2014); *Staggs*,

2024 WL 4509101 at *2 (stating "blanket refusals to search for relevant documents will not be deemed acceptable"); *see also In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-2843, 2021 WL 10282215, at *3 (N.D. Cal. Sept. 29, 2021) ("Facebook has refused to search for and produce these materials in this action, even when specifically asked to do so over a year ago. It must do so now."). This calls into question Meta's responses and objections since, "[w]ithout searching for and reviewing the [materials], [Meta] cannot make any credible representations or arguments regarding the responsiveness or relevance of the contents of these [materials]." *See In re Facebook*, 2021 WL 10282215 at *6.

How can Meta certify "that to the best of [its] knowledge, information, and belief formed after a *reasonable inquiry*" its responses are "complete and correct"? *See* Fed. R. Civ. P. 26(g)(1)(A) (emphasis added). Meta argues that almost all of Plaintiffs' RFPs are not made with "reasonable particularity." However, "reasonable particularity" merely requires "reasonable notice of what is called for[.]" *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 395 (C.D. Cal. 2022) (collecting cases). Requiring Plaintiffs to justify every single RFP through an individual conferral before Meta will even consider whether it has responsive information is neither efficient nor justified under the Federal Rules. It also ignores Meta's corresponding "obligation to construe… requests in a reasonable manner," *id.* at 396 (citations omitted), so that discovery may proceed efficiently. Feigned ignorance is no excuse to refuse to search.

Plaintiffs have exhausted the conferral process attempting to convince Meta to do what it was always obligated to do. Since Meta continues to ignore Plaintiffs' requests, case law, and the Federal Rules, an order compelling Meta to search has become necessary.

**B. Meta Must Produce Material by a Date Certain**

For the few RFPs Meta has already agreed to "search for and produce" responsive material, the Court should compel Meta to begin production. Meta represented searches for 28 of RFPs were ongoing as far back as August 7. Yet Meta has still not produced materials in response to most of these RFPs. For example, Meta still has not produced any information relating to what departments and individuals had access to the infringing. IP addresses, after months of agreeing to do so. This seriously hampers Plaintiffs' ability to move its case forward. This perpetual delay is not a

"reasonable time," *see* Fed. R. Civ. P. 34(b)(2)(B), nor has Meta bothered to justify the delay in any of its responses or conferrals. *See* Ex. A. To break this gridlock, the Court should compel a date certain for Meta to begin its rolling production. *See FTC v. Fitness Int. LLC*, No. 25-1841, 2026 WL 3103396, at *2 (C.D. Cal. Sept. 24, 2026) (granting request for a date certain for production).

**C. The Court Should Admonish Meta's Discovery Misconduct**

It should not take this many conferrals to convince Meta to search for responsive material. "Counsel in a litigation have legal duties to take proactive steps in supervising and searching for documents in discovery that go far beyond simply acceding to a client who fails (*or worse, refuses*) to produce or provide documents." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-3047, 2024 WL 4125618, at *15 (N.D. Cal. Sept. 6, 2024) (collecting cases) (emphasis added). Meta's "counsel is responsible for coordinating [their] client's discovery efforts," *see Radio City, Inc. v. Celestron Acquisition, LLC*, No. 20 -3642, 2023 WL 5519324, at *7 (N.D. Cal. Aug. 25, 2023) (citation omitted), and "failure to institute a reasonable procedure to account for the collection and production of materials violates Rule 26(g)." *See Vasquez Perdomo v. Mullin*, No. 25-5605, 2026 WL 2755039, at *8 (C.D. Cal. Aug. 14, 2026) (citing *Turnage*, 115 F.R.D. at 556).

Here, Meta's and its counsel's violations of Rule 26(g) are even starker. They stubbornly refuse to search for materials, *see* Fed. R. Civ. P. 26(g)(1)(B)(i) (responses must be "consistent with these rules"), while wasting Plaintiffs' efforts on futile conferrals and motions to compel. *See id.* at 26(g)(1)(B)(ii) (responses must "not [be] interposed for any improper purpose"). To send a clear message that this misconduct is unacceptable, and to ensure it does not hamper further discovery efforts, the Court should admonish Meta and its counsel to obey their discovery obligations. *Cf. Mullin*, 2026 WL 2755039 at *9 (admonishing "counsel and remind[ing] them they are ultimately responsible for supervising the discovery process").

## III. CONCLUSION

Accordingly, Plaintiffs request that the Court compel Meta to perform a good faith search for materials in response to Plaintiffs' RFPs, compel Meta to produce responsive materials by a date certain, and admonish Meta and its counsel for their discovery misconduct.

**META'S POSITION**

Plaintiffs' motion flouts this Court's Standing Order, the ESI Order (Dkt. 65), and basic discovery principles. Plaintiffs seek to compel Meta to search for and produce documents in response to dozens of requests from their first set of document requests ("RFPs") without first complying with their meet and confer obligations and without making any effort to relevance or need as to *any* of them in their motion. Instead, Plaintiffs attach a chart *exceeding 150 pages* listing 90 requests,[3] almost none of which are mentioned in their motion, let alone argued, and demand that Meta be ordered to produce documents in response to all of them en masse. As the chart plainly shows, Plaintiffs' requests are facially overbroad, disproportionate to the needs of the case, and in some cases, unintelligible. Further, to the extent the requests seek relevant documents, Meta has already agreed to look for them in response to other RFPs (as noted explicitly in the chart). Meta's production, which is already underway, will include, *inter alia*, all documents it can reasonably find relating to Plaintiffs, their websites and works, any use of the alleged Meta and third-party IP addresses to conduct any torrenting alleged in the Complaint, and all documents from *Kadrey* related to torrenting. Plaintiffs have not articulated the relevance of any documents beyond what Meta has already agreed to produce. Thus, Plaintiffs' motion is procedurally improper and substantively baseless. Meta respectfully requests that the Court deny the motion and reaffirm Plaintiffs' obligation to confer in good faith before seeking Court intervention on any of their RFPs.

***Plaintiffs' RFPs and Meta's Responses*:** On March 27, 2026, Plaintiffs served a first set of 102 RFPs that largely failed to "describe with reasonable particularity" the materials sought. Fed. R. Civ. P. 34(b)(1)(A). Meta timely objected to many as overbroad, vague, irrelevant, and disproportionate to the needs of this case, as they seek broad categories of documents untethered to the at-issue conduct or Plaintiffs' works (*see, e.g.,* RFP No. 8, seeking "All contracts, service agreements, and account records between META and any ISP or CLOUD NETWORK" from 2018 to 2026). Nonetheless, Meta agreed to search for and produce nonprivileged documents responsive to 8 RFPs and, after meeting and conferring, supplemented its responses to include 31 more. The

[3] The exact RFPs at issue remain unclear even upon review of Plaintiffs' chart. Plaintiffs stated in an October 30 meet and confer that they were moving on 61 RFPs, yet their chart lists 90 RFPs across three categories. Their first footnote says they are not moving on every RFP, but does not specify which ones, and their compromise position is left blank on 8 RFPs.

documents Meta has agreed to search for go to the heart of this case—including documents and communications concerning (i) Plaintiffs or their works; (ii) any use of the alleged Meta or third-party IP addresses to conduct the torrenting alleged in the Complaint; (iii) the assignment and use of those IP addresses, if any, by Meta and its employees and contractors; and (iv) Meta's torrenting-related policies. In response to Plaintiffs' second set of RFPs, Meta also agreed to produce all torrenting-related documents from *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417 (N.D. Cal. 2023) and related cases, including full custodial files for certain *Kadrey* custodians, as well as Meta witness and expert deposition transcripts and Meta's responses to written discovery mentioning torrenting. These materials reflect years of effort to gather documents from many dozens of individuals concerning Meta's torrenting for AI training and obviate many of Plaintiffs' duplicative requests. Meta's productions in this case began months ago and total nearly 7,000 pages, and will be substantially supplemented in the coming weeks.

***Meet and Confer Efforts and the Present Motion*****:** Plaintiffs have sought to meet and confer on only a small fraction of their RFPs. Specifically, Plaintiffs raised approximately 20 RFPs during the parties' initial June calls, six more on July 29, and five more on September 4. And on several occasions, Plaintiffs sent Meta draft letter briefs on issues the parties either were actively discussing or had not yet discussed at all. In response, Meta repeatedly reminded Plaintiffs that the parties should confer first, because—as Plaintiffs recognize—there was generally room for compromise on, or at least clarification of, the issues in dispute. In keeping with their prior practice, during a conferral on October 30 to discuss Plaintiffs' deficient responses to *Meta's* discovery, Plaintiffs announced that they would be moving on 61 unidentified requests. Meta asked to meet and confer, reminding Plaintiffs that the Court's Standing Order requires it. Plaintiffs refused.

***Plaintiffs' Violation of the Standing Order Warrants Denial*****:** As a preliminary matter, the Court should deny the motion for failure to comply with the Court's Standing Order in two separate respects. ***First*****,** Section 7(b) provides that "the parties must meet and confer to attempt to resolve the dispute" before seeking court intervention; a "*mere exchange of letters, emails, telephone calls, or voicemail messages does not satisfy th[is] requirement.*" (emphasis in original). Plaintiffs' certification that the parties have met and conferred on the RFPs at issue in this motion is inaccurate.

Plaintiffs never met and conferred with Meta on 48 of the 56 RFPs listed in the first section of the chart. Moreover, Plaintiffs cite to conferrals the parties had on entirely different topics, including a discussion on Plaintiffs' *second set* of RFPs (August 19 and 28) and a conferral regarding Plaintiffs' deficient responses to *Meta's* discovery (October 30).

Plaintiffs also mischaracterize the meet and confer that did occur. What Plaintiffs describe as Meta "weaponizing" the process is, in reality, Meta doing what the Standing Order and ESI Order[4] require—cooperating in good faith to engage on specific RFPs, narrow disputes, and reach compromise where possible. That Meta supplemented certain responses following conferral does not show bad faith; that is the intended outcome of requiring the parties to specifically discuss each request in dispute before filing a motion. As Plaintiffs' own cited case states: "the parties should be sharing their positions at every turn so that the Court can be assured that it is being presented only with those issues that the parties truly cannot solve without the Court's intervention." *Staggs v. Panda Express, Inc.*, 2024 WL 4509101, at *3 (M.D. Tenn. Oct. 16, 2024). Plaintiffs' failure to meet and confer, alone, warrants denial of their motion. *See Scheinuck v. Sepulveda*, 2010 WL 5174340, at *1 (N.D. Cal. Dec. 15, 2010) (denying motion for failure to meet and confer).

Plaintiffs' demand for documents regarding third-party VPNs illustrates their backwards approach. Meta initially objected to RFP Nos. 40–42 (seeking documents regarding FreedomTech, ProtonVPN, and Kape) because the Complaint does not mention those entities and Plaintiffs had never explained their relevance. During a meet and confer, Plaintiffs identified these three VPNs as relevant because they purportedly own or lease some of the third-party IP addresses identified in the Complaint, and Meta agreed to search for responsive documents. Plaintiffs now complain that Meta has refused to search for similar documents as to xTom and Cogent (RFP Nos. 39, 43). Meta is learning for the first time in this Motion that Plaintiffs claim to have traced unidentified IP addresses purportedly used to torrent their works back to Cogent, and they have yet to explain why xTom is relevant. Discovery requires dialogue and cooperation, not gamesmanship.

***Second,*** Plaintiffs also improperly shirk the Standing Order's five-page-per-side limit by

---

[4] "The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with the Guidelines . . . [t]he parties' cooperation includes propounding reasonably particular discovery requests." Dkt. 65 at 1.

submitting an unwieldy, 150-plus-page "compromise" chart addressing over 80 requests not specifically discussed in this brief. "[A]ny argument set forth in the chart which is not addressed in the Submission" should be disregarded. *Avila v. Ford Motor Co.*, 680 F. Supp. 3d 1125, 1128 (N.D. Cal. 2023) (van Keulen, M.J.). Without waiving its objections to Plaintiffs' chart, Meta includes responses in the chart solely to specify what it has already agreed to produce.

***Plaintiffs Fail to Make the Necessary Individualized Showing of Relevance*:** Even setting aside Plaintiffs' failure to comply with the Standing Order, their motion must be denied because Plaintiffs fail to make an individualized showing of relevance or even identify which RFPs they are moving on. "[T]he party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Owen v. Hyundai Motor Am.*, 344 F.R.D. 531, 535 (E.D. Cal. 2023). This requires that the moving party specify "which discovery requests are the subject of [the] motion to compel, and, for each disputed response, inform the Court why the information sought is relevant and why Defendant's objections are not justified." *Ellis v. Cambra*, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008). Only "[o]nce the moving party establishes that the information requested is within the scope of permissible discovery, the burden shifts to the party opposing discovery." *Colaco v. ASIC Advantage Simplified Pension Plan,* 301 F.R.D. 431, 434 (N.D. Cal. 2014). Plaintiffs flout all of these basic requirements.

***First***, Plaintiffs fail to identify which specific requests they are moving on. They concede that they "do not seek to compel responses to all the RFPs in which Meta has refuse[d] to search for materials," yet never identify which requests are at issue—leaving Meta and the Court to guess. This alone dooms their motion. ***Second***, Plaintiffs make no effort to show that their RFPs are relevant and proportional to the needs of the case pursuant to Rule 26(b)(1), nor to explain why any of Meta's specific objections are unjustified. Indeed, Plaintiffs argue that their requests need only provide "reasonable notice of what is called for," but make no attempt to show that their requests do even that. Instead, Plaintiffs appear to be arguing that Meta's refusal to search for documents in response to RFPs to which Meta has timely objected in writing and with specificity, standing alone, warrants Court intervention, irrespective of the propriety of their RFPs. That argument is unsupported, even by Plaintiffs' own cited cases. *See Bank of Am., N.A. v. Sellars,* 2014 WL

1356217, at *2 (W.D. Wash. Apr. 7, 2014) (holding that parties cannot refuse to *respond in writing* to discovery requests in bulk); *Staggs v. Panda Express, Inc.*, 2024 WL 4509101, at *2 (M.D. Tenn. Oct. 16, 2024) (holding that the responding party must lodge specific objections to each request rather than boilerplate responses and blanket refusals—neither of which Meta did here); *In re Facebook, Inc. Consumer Priv. User Profile Litig*., 2021 WL 10282215, at *5 (N.D. Cal. Sept. 29, 2021) (ordering production of specific notebooks after finding that the requesting party had established relevance). There are numerous defects in Plaintiffs' dozens of requests that cannot be addressed within the space permitted here, nor is it Meta's burden to do so when no threshold showing of relevance has been made by Plaintiffs in this motion. Meta respectfully requests that the Court direct Plaintiffs to meet and confer on any requests they wish to pursue so that any remaining, narrowed disputes may then be brought before the Court if needed.

***Plaintiffs' Remaining Requests for Relief Lack Legal Basis*:** Plaintiffs also ask the Court to compel Meta to "begin its rolling production" and to "admonish" Meta for "discovery misconduct." Plaintiffs cite no authority for either request, and no such relief is warranted. ***First***, Meta has *already begun* rolling productions in response to Plaintiffs' first and second sets of RFPs. Plaintiffs' request for relief on this point is particularly inexplicable given that they have not produced any custodial ESI and recently confirmed that they have not yet completed their own productions in response to Meta's first set of discovery requests served in March 2026. In any event, the stipulated ESI Order provides that the parties "may produce documents on a rolling basis" (Dkt. 65), and no additional discovery deadlines exist beyond the close of fact discovery on March 4, 2027 (Dkt. 52). Meta expects to finish its productions well before that deadline. ***Second***, "admonishment" is not a form of relief, nor would it be appropriate here. To the extent Plaintiffs argue that Meta is refusing to search for relevant materials it has agreed to produce, that is inaccurate. As stated in the parties' recent joint discovery statement (Dkt. 83), Meta is undertaking a painstaking investigation—including company-wide searches and dozens of interviews—to determine whether responsive documents exist. To date, Meta has found no evidence supporting Plaintiffs' theory that Meta directed the alleged torrenting of their works for any purpose. If Meta finds any such evidence, Meta will produce it. Plaintiffs' motion should be denied in its entirety.

Dated: November 5, 2026

WAUGH PLLC

/s/ Christian W. Waugh
Christian W. Waugh

Christian W. Waugh (FL SBN 71093)
WAUGH PLLC
201 E. Pine Street, Ste. 315
Orlando, FL 32801
Telephone: (321) 800-6008
Email: cwaugh@waugh.legal

Trey Brown (SBN 314469)
In-House Counsel
Strike 3 Holdings, LLC
11271 Ventura Blvd., Ste. 717
Los Angeles, CA 91604
Telephone: (323) 347-4271
Email: trey@strike3holdings.com

Jeremy J. Thompson (MN SBN 402173)
The Law Office of Jeremy J. Thompson PLLC
5200 Wilson Road, Ste. 150
Edina, MN 55424
Telephone: (952) 952-1883
Email: jeremy@jthompson.law

Lincoln D. Bandlow, Esq. (SBN 170449)
Law Offices of Lincoln Bandlow, PC
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9680
Email: Lincoln@BandlowLaw.com

Brian S. Ginter (SBN 265786)
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Telephone: (213) 236-0600
E-mail: bginter@bwslaw.com

Attorneys for Plaintiffs STRIKE 3 HOLDINGS, LLC and COUNTERLIFE MEDIA, LLC

Dated: November 5, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Angela L. Dunning*
Angela L. Dunning

CLEARY GOTTLIEB STEEN
& HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
SAMUEL BLANKENSHIP (339905)
sblankenship@cgsh.com
KIMBERLY BITTINGER (359907)
kbittinger@cgsh.com
151 University Avenue
Palo Alto, CA 94301
Telephone: +1 (650) 815-4100

CLEARY GOTTLIEB STEEN
& HAMILTON LLP
THOMAS W. YEH (287118)
tyeh@cgsh.com
650 California St., Suite 2400
San Francisco, CA 94108
Telephone: +1 (415) 796-4400

Attorneys for Defendant
META PLATFORMS, INC.

**CERTIFICATION OF CONFERRAL**

Pursuant to L.R. 37-1, and Your Honor's Rule 7(b), the undersigned counsel certifies that, prior to the filing of Joint Statement of Discovery Dispute, the parties met and conferred, via videoconference, on the various issues discussed on May 26, June 2, June 5, July 29, August 19, August 28, September 4, October 2, and October 30.

Dated: November 5, 2026

WAUGH PLLC

/s/ Christian W. Waugh
Christian W. Waugh

Attorneys for Plaintiffs STRIKE 3 HOLDINGS, LLC and COUNTERLIFE MEDIA, LLC

**CERTIFICATION OF CONSENT TO FILE JOINT MOTION**

Pursuant to L.R. 5-1(i)(3), I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 5, 2026

WAUGH PLLC

/s/ Christian W. Waugh
Christian W. Waugh

Attorneys for Plaintiffs STRIKE 3 HOLDINGS, LLC and COUNTERLIFE MEDIA, LLC